No. 20.—James Dowdell, plaintiff in error, *vs.* John Neal, defendant in error.

[1.] When an execution is levied upon land, and at the same time upon personal property, and the land alone is sold, the execution is not, *prima facie*, satisfied by such a levy on personal property, and the purchaser of the land gets a good title.

[2.] The Jury are not bound to believe according to the number of witnesses, but may take into view the circumstances in which the witnesses were placed—their means of knowledge, &c. &c. and may believe one against two or more. But if *two* witnesses testify one way as to a material point, and *one* to the contrary, *and all are of equal credibility*, they are to believe the *two* rather than the *one*.

[3.] If P, a purchaser at Sheriff's sale, agrees with W, the defendant in execution, that the latter may redeem the property sold, by paying the purchase money back to P, and W, pays a part, and subsequently, within reasonable time, offers to pay, or does pay the balance, he acquires a title to the property, which will subject it to levy and sale at law a second time, as his property. To be so subject, the contract must be fully executed. But if after such an agreement, and after the payment back of a part of the purchase money, and before it is fully executed, P and W, together with others, or singly, enter into a new contract, by which P, agrees to convey the property to a third person, and W is to pay back to P the purchase money, and to have satisfaction entered upon a judgment against him, held by the third person; this new contract is valid, and the property is not subject to levy and sale, as the property of W.

[4.] A sale of property under a junior judgment and execution, passes the title as against the lien of older judgments.

Claim, &c. in Talbot Superior Court. Tried before Judge Iverson, March Term, 1851.

A *fi. fa.* in favor of *James Dowdell vs. B. Whitehurst,* was levied on certain real estate, (the Talbotton Hotel,) to which John Neal interposed a claim.

On the trial, complainant offered in evidence, a *fi. fa.* in favor of Joseph Pou, against Whitehurst and Giddens, for about $1200, with a levy thereon by the Sheriff, on the 22d day of January, 1842, on the premises in dispute, and simultaneously on ten negro slaves, together with a Sheriff's deed to the premises in dispute, to Joseph Pou, as purchaser, at the sale under

the above levy. Plaintiff's counsel objected to the introduction of said deed, on the ground the sale was, *prima facie,* void—the levy being on personal property, more than sufficient to satisfy the same; that the *fi. fa.* was, *prima facie,* satisfied, and that it was incumbent on claimant to explain the said levy, before the deed could go in evidence. The objection was overruled by the Court, and exceptions filed by plaintiff below.

Plaintiffs then introduced the depositions of James K. Giddens, who swore that after the sale of the Talbotton Hotel, Pou, the purchaser, told him that he had agreed with defendant in *fi. fa.* Whitehurst, that he might have the tavern back *at any time,* for the price paid at Sheriff's sale; that under this agreement, witness, as agent for Whitehurst, paid Pou some time during the spring or summer, $915, in Central Bank and Alabama bills, received at $717. That the balance of the $1028, (the purchase money,) was paid on the day that the deed from Pou was made to Neal, the claimant, and was paid by witness, as the agent of Whitehurst. Witness, as agent for Whitehurst, and E. H. Worrill, as attorney for Neal, the claimant, agreed that Pou was to execute a deed to Neal; and that a *fi. fa.* in favor of Neal, against Whitehurst, Giddens, Robinson and others, for $3,000 or $4,000, was to be entered satisfied. There was no agreement that the *fi. fa.* was to be transferred to Pou. This agreement was made after the $915 was paid Pou, and before the balance was paid.

Claimant introduced Joseph Pou, who swore that Whitehurst asked witness to be allowed to redeem the Talbotton Hotel, by paying witness the bid—which witness agreed to, if done by the 1st May thereafter; that Whitehurst failing to do so, he took titles to himself; that Giddens brought witness $915 in depreciated bills, and proposed to pay it in part, towards redeeming said property; that he received the bills as his (Giddens' money) and gave Giddens an instrument to that effect; that subsequently, it was agreed between witness, Neal, (claimant,) Worrill, Whitehurst, Giddens and others, that witness should convey said property to Neal, in consideration that Neal would transfer to him (witness) a *fi. fa.* for $3,000 or $4,000, against said

Whitehurst, Giddens and others, and upon said defendants paying witness the amount of said bid, ($1028,) witness was then to satisfy said *fi. fa.* in full; that the balance was paid witness by Giddens, who said he acted as agent for Whitehurst.

Claimant also introduced Edmond H. Worrill, who swore that about 20th August, 1842, Giddens proposed to witness, as attorney for Neal, to trade the tavern for a *fi. fa.* held by *Neal vs. Whitehurst, Giddens and others,* for $3,000 or $4,000; that it was agreed between witness, Giddens and Pou, that the execution was to be transferred to Pou, on his making a quit-claim title to Neal, and then it was to be satisfied by Pou, on their paying him the amount of his bid. Neal's *fi. fa.* was younger than the present plaintiff's, Dowdell's.

The Court, among other things, charged the Jury, that " if two witnesses testified one way, upon a material point, and one other witness testified differently, or in conflict with the two, all of them being otherwise unsuspected and entitled to equal credit, the Jury were bound to believe the two rather than the one. If one witness testified to a material point, and another swore differently and in conflict with the other, and there were circumstances proved in the case, corroborating the testimony of one of the witnesses, both being otherwise entitled to credit, the Jury were bound to give more credit to that witness who was corroborated by other circumstances. To this charge, plaintiff's counsel filed exceptions.

The Court also charged the Jury, " that if they believed from the evidence, that Pou accepted the $900 of Whitehurst, or his agent, in part payment of the tavern, and with the understanding that Whitehurst might redeem the same, by paying back the purchase money and interest, then Pou (notwithstanding the agreement was without consideration) was bound to re-convey to Whitehurst, on the payment of such balance, if tendered within a reasonable time; but if Pou received said $900 of said Giddens, as his money, and not in part payment for said tavern, then Pou would not be bound thereby, by any subsequent offer of said Whitehurst, to pay said balance; and that Pou's understanding of how said $900 was received, and not Giddens', must govern ;

and that in either event, if Pou, Whitehurst and Neal, subsequently made an agreement, by which Pou was to convey said property to Neal, and Neal to transfer the *fi. fa.* against Giddens, Heard and others, to Pou ; and said Whitehurst to pay to Pou said $1028, for which, Pou was to satisfy said *fi. fa.* that such could be a valid agreement, and would not render said property subject to plaintiff's *fi. fa.* And that if such was the agreement, it was of no consequence to consider at what time the $1028 was paid Pou, whether before or after the making of the deed from Pou to Neal—it all being in fulfilment and execution of the agreement between the parties, and must be considered in law as one transaction, and as having been executed at the same time. To which charge, plaintiff's counsel filed exceptions.

The Court farther charged the Jury, "that if the property originally belonged to Whitehurst, yet if it was regularly levied on and sold at Sheriff's sale, and purchased by Pou, the title passed out of Whitehurst to Pou, although the *fi. fa.* of Pou, (under which it was sold,) may have been in fact, younger than the *fi. fa.* of said plaintiff, Dowdell. To which charge, plaintiff's counsel filed exceptions.

Upon these several exceptions, error has been assigned.

L. B. SMITH and B. HILL, for plaintiff in error.

BENNING, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] A levy upon personal property is, *prima facie*, a satisfaction. That is, it is a satisfaction so far as to throw upon the plaintiff, the burthen of showing, either that it is insufficient, or that the proceeds have been applied to the satisfaction of prior levies, or that it was otherwise unproductive, and made so without fault of the plaintiff or the Sheriff. 6 *Geo. R.* 395. 8 *Geo. R.* 327. With these limitations it extinguishes the judgment, the defendant is discharged, and it has no right of claim upon funds of the

Dowdell *vs.* Neal.

defendant for distribution, as against other *fi. fas.* Whilst this is true, it is not true that when a levy is made upon personal property, and simultaneously a levy upon real property, and the real property is alone sold, that the purchaser gets no title. Such were the facts in this case. The question is, whether the sale of the land, under such circumstances, conveyed a title to the purchaser. The lien of the judgment is general—it attaches upon all the property, real and personal, of the defendant, from its date. There is no law which directs a levy upon the personal estate first, to the exclusion of the right to levy on the lands. The plaintiff may go upon either at his election, or he may go upon both, as he did in this instance. A levy upon either, or both, will be a legal levy. If the plaintiff elects to go upon the personalty, and that alone, he is subject to the rule above laid down. If he has caused a levy on personalty and lands at the same time, the execution is competent to sell either. Its functions extend to both, and if the land alone is sold, it is as if the land alone was levied upon. The purchaser takes the title which the defendant has, unaffected by the contemporaneous levy on the personalty, just as he would take it, had no levy been made on the personalty. Nor is there any limitation upon the power of the Sheriff to sell, under such circumstances. The levy and the sale are legal. Whether the Sheriff has, or has not, made himself responsible for an excessive levy, is a matter foreign to the purchaser and his title. Whether, if there had been a levy on personal property alone, and afterwards a levy and sale upon real property, the purchaser would or would not be put upon accounting for the first levy, before his deed could go in evidence, and his title be sustained, is a question not made, and upon which, I express no opinion. In this case, the execution and deed were properly admitted.

[2.] The two several charges of the Court as to the credibility of the witnesses, do not appear to us to be at all objectionable. The Court said, first, that "if two witnesses testified one way upon a material point, and one other witness testified differently, or in conflict with the two, all of them being otherwise unsuspected and entitled to equal credit, the Jury were bound to believe the

Dowdell *vs.* Neal.

two rather than the one." The counsel for the plaintiff in error construe this charge as asserting that the rule of credibility is *numbers*, and that because *two* witnesses testify one way, and *one* in conflict, the Jury must believe the two and discredit the one, without regard to any thing, other than the fact that there are two against one. If the Court had laid down any such rule, it would have been erroneous. The Jury may consider the circumstances in which witnesses are placed—their means of knowledge—their connection with, or relationship to the parties—their character for truth and veracity, when that is impeached—and indeed, anything affecting their credibility; and thus considering, they may believe one against two or more. The Court laid down, as we believe, no such rule, but came fully up to the requirement of the plaintiff in error. He instructs the Jury, that if the three are unsuspected, and of *equal credibility*, then they are to believe two rather than one, who is in conflict with them. He leaves the matter of credibility open to them. He does not prohibit them from looking to the circumstances and conditions which add to, or detract from their credibility. He asserts no rule of credibility, drawn from numbers, irrespective of these circumstances and conditions, but instructs the Jury, that if, after taking them into view, the witnesses are all of *equal* credibility, they must believe two rather than one. To this rule, we do not understand the counsel themselves as objecting.

The Court further instructed the Jury, " that if one witness testified to a material point, and another swore differently, and in conflict with the other, and there were circumstances proved in the case, corroborating the testimony of one of the witnesses, both being otherwise equally entitled to credit, the Jury were bound to give more credit to that witness who was corroborated by circumstances." The objection to this charge is, that there was nothing in the case to warrant it. We are not sure of that. Upon a vital point in the case, to-wit: the exact extent and meaning of the agreement between Pou, the purchaser, and Whitehurst, the defendant in execution, relative to the redemption of the property, there was conflicting evidence. Several witnesses were sworn. One was the purchaser, Mr. Pou, testi-

fying to *his* understanding of his own agreement with Whitehurst; and another was the agent of Whitehurst, Mr. Giddens, who testified differently as to what the agreement was. It was a case where the Jury would be obliged to look for corroborating circumstances, *because of the conflict,* and for this reason the instruction properly grew out of the case. What harm could it do ? The Jury could not be misled by it. It was just as likely to operate favorably to the plaintiff in error, as to the defendant.

[3.] Nor do we find any error in the instructions of the Court touching the agreements, about which there was some contradictory evidence. The plaintiff in error sought to subject the tavern to the payment of his execution, upon the ground, that by an agreement between Pou, the purchaser, and Whitehurst, the defendant in execution, the latter had acquired such an interest in it, as made it subject to levy and sale. The claimant relied upon a deed made to him by Pou, the purchaser, in pursuance of another and subsequent agreement entered into between himself, Pou, Whitehurst and others. In relation to both agreements, evidence was submitted to the Jury. Giddens' evidence was to the effect, that Pou had agreed with Whitehurst, that he, (Whitehurst,) should redeem without regard to time, and that in pursuance of that agreement, he (the witness,) as the agent of Whitehurst, had paid Pou some $900 of the sum at which Pou had bid off the property, and which sum Whitehurst was to refund. Whereas, Pou testifies that he agreed that Whitehurst should redeem, by paying him the purchase money *by a time certain;* that the $900 paid by Giddens to him, was after that time, and was received by him as Giddens' money, and not as Whitehurst's, and that afterwards he made another and different agreement with Whitehurst, Giddens, Neal and others, by virtue of which he was to be paid the whole of his purchase money, and was to convey to Neal, and that the money paid by Giddens was *applied,* that is, retained by him, as a payment of so much of the purchase money, under and by virtue of this second agreement, and that the balance of his purchase money being paid to him under the second agreement, he conveyed the tavern to Neal, the

claimant. This statement is full enough for the purpose of the remarks I have to make on the instructions of the Court. Leaving these facts to the Jury, Judge *Iverson* found himself under the necessity of laying down a rule of law which should govern them, whether they should believe according to Giddens' version of the matter, or according to Pou's version. The case had two aspects, and he was constrained to look at it in both, in applying the law. We think he did it fairly, and without error; assuming, as the presiding Judge did, that there was a contract with Pou and Whitehurst, which was, in part, consummated by the payment of the $900, and which contract was not revoked before full consummation, the law suited to such a case was well laid down. The Court said, " if the Jury believed from the evidence, that Pou accepted the $900 of Whitehurst or his agent, in part payment of the tavern, and with the understanding that Whitehurst might redeem, by paying back the purchase money with interest, then Pou, (notwithstanding the agreement was without consideration,) was bound to re-convey to Whitehurst, on the payment of such balance, if tendered within a reasonable time ;" that is to say, the payment of part (in redemption) of the purchase money, and a subsequent payment of the balance would entitle Whitehurst to a deed ; and if so, would, in accordance with *Pitts and Bullard*, create in Whitehurst, such an interest as would be liable to levy and sale. The principle settled in that case was this : "If A buy land from B, and pay the entire consideration or purchase money, and take an unconditional bond for titles, and there is nothing more for him to do to consummate the contract, B is a mere trustee, and the legal estate rests in A, and it is subject to levy and sale under an execution and judgment against A, at law." 3 *Kelly*, 5. With this part of the charge, we do not understand the plaintiff in error to be dissatisfied. It was in his favor.

His honor, the presiding Judge, proceeds to say : " But if Pou received said $900 of Giddens, as his money, and not in part payment for the tavern, then Pou would not be bound thereby, by any subsequent offer of Whitehurst, to pay the balance." That is to say, if there was an agreement between Pou and White-

hurst, that the latter should redeem the tavern, and he should offer to pay only a part of the purchase money, Pou would not, by such offer, be bound to convey to Whitehurst, and the title would not so pass to Whitehurst, as to render the tavern subject to levy and sale. To make it so subject, the payment of the purchase money—the consummation of the contract—is a condition precedent. There can be no doubt of the soundness of this proposition of the Court. The Court instructed the Jury farther, as follows: " *If, in either event,* (that is, whether the $900 was paid by Giddens, as the money of Whitehurst, in pursuance of his agreement with Pou, or as Giddens' own money,) *if Pou, Whitehurst and Neal, subsequently made an agreement, by which Pou was to convey said property to Neal, and Neal to transfer the fi. fa. against Giddens, Heard and others, to Pou, and Whitehurst to pay to Pou the $1028, (the purchase money which Pou paid,) for which Pou was to satisfy said fi. fa. that such would be a valid agreement, and would not render said property subject to the plaintiff's fi. fa.*" This charge is strenuously resisted by the plaintiff in error. We cannot see that his objections to it are well founded. In one of the events named by the Court, that is, in the event that the Jury should find that the $900 was paid to Pou as Giddens' own money, it cannot be doubted but that the law was administered. If that be true—that is, if the $900 was paid as Giddens' money, (as Pou testifies,) and not as Whitehurst's, in accordance with the first contract—then there was no execution, even in part, of that contract, until the second was made. It was certainly competent for Pou and Whitehurst, having entered into an agreement, and that agreement not being executed, even in part, and, according to Pou's testimony, the time for executing it having transpired, either themselves, or in connection with Neal and others, to make a new contract in relation to the same subject matter, without prejudice to third persons. I apprehend that the complaint of the plaintiff in error grew out of the other event, put to the Jury by the Court. That *event* to be found by the Jury was, that the $900 was paid as the money of Whitehurst, and in part execution of his contract with

Pou. Even then, the Court says, it was competent for Pou and Whitehurst, with Neal and others, to enter into a valid contract, which would supersede the first contract. The ground taken by counsel for plaintiff in error, I understand to be this: If there was an agreement entered into between Pou and Whitehurst, by virtue of which the latter was allowed to redeem the tavern, by paying to the former the $1028, at which he bid it off, and the latter did, in fact, pay $900, in pursuance of that agreement, Whitehurst thereby acquired an interest in the tavern, which would make it subject to levy and sale, *notwithstanding* a new and wholly different contract was entered into by them, *before* the balance of the $1028 was paid. By all the testimony, the whole of the purchase money ($1028) was not paid to Pou until after the new contract was made. Is this position sound? It is not, according to *Pitts and Bullard*. By that leading case, the contract must be executed—nothing must remain to be done —before the purchaser can acquire such title to the property as will make it liable at law to execution. He must pay down the entire consideration. At any time before this is done, the parties may come together and annul or vary their contract. Before this was done in this case, they did make a new and different contract—a contract by which Pou received back his bid for the tavern, ($1028)—Whitehurst got a satisfaction upon a judgment against him and others, held by Neal—and Neal got a title to the tavern. *When this last contract was made,* Pou had not parted with the title to the tavern; he could sell it to whomsoever he pleased. The old contract never having been executed, Whitehurst had acquired no title; and if he had acquired an equitable interest, he relinquished that. It was his right, under the Act of 1818, to pay Neal, to the exclusion of Dowdell. And surely Neal had a right to buy Pou's property. What right has Dowdell to complain of all this? He was no party to either of these contracts. He had no interest in this tavern, for it had been sold as Whitehurst's property under execution, and Pou bought it. He was the owner; Dowdell could acquire no right to re-sell it, but by a re-purchase on the part of Whitehurst, and that he did not make. It was wholly immaterial whether

the $1028 was paid to Pou before or after he made a deed to Neal ; the payment and deed was part and parcel of the contract. If the money was paid, and the deed executed in accordance with it, it does not matter even that the $900, which had been handed to Pou, was recognized by him as part payment. If Dowdell has been injured at all, it is *damnum absque injuria.*

[4.] This Court has already decided the last question made in this record. The lien of an older judgment does not attach upon the property of the defendant, after it is sold under a junior judgment and execution. The older judgment creditor must look to the fund. Of course, under such sale, the purchaser gets a good title. *Harrison and others vs. McHenry,* (9 *Ga. Rep.* 164.)

Let the judgment be affirmed.