Amis *vs.* Cameron.

---

WILLIAM AMIS, plaintiff in error, *vs.* BENJAMIN T. CAMERON, executor, defendant in error.

1. The heirs or legatees of an estate, when all are of full age, may distribute the same by consent when and how they please, so that they do not leave debts of the decedent unpaid, but they have no right, as against creditors who are not parties to the arrangement, to depart from the due course of administration, whether at the time of so doing they know of the existence of debts, or not.

2. Executors who qualified in 1859, but returned no inventory or appraisement, and never submitted their actings and doings to the supervision of the ordinary, by making returns or otherwise, have not legally administered, as against a creditor of the testator; and they cannot, upon a plea of *plene administravit*, defend themselves against the suit of the creditor by showing

that although the assets were sufficient to pay the debt, they were distributed among the residuary legatees in a manner agreed upon by themselves, (the executors included,) that the distribution was not completed till after the expiration of more than twelve months from qualification and grant of letters testamentary, that in the meantime due notice to creditors was published for six weeks as the statute requires, and that no account of the creditor's demand was rendered in, nor any notice given of the same, until some years after the executors had thus parted with all the assets.

3. Where the conflict in evidence, if any, was between parties to the suit on the one side, and a disinterested witness on the other, it was error to charge the jury that those witnesses were to have the preference whose means of information were the best and who had the best opportunity to notice and remember the facts. It was error, also, in such case, to charge that, in the absence of any corroborating circumstance, if all the witnesses were surrounded by the same circumstances, and were alike in everything but numbers, the evidence of two would overcome the evidence of one, and the jury were bound to believe the two in preference to the one. Where witnesses are parties to the suit, whatever may be their numbers, their opportunities, or means of information, the jury are to judge of the degree in which their interest affects their credibility.

Administrators and executors. Distribution. Witness. Charge of Court. Before JAMES M. MOBLEY, Esq., Judge *pro hac vice.* Troup Superior Court. November Term, 1874.

This suit was originally brought against John S. Hill and Benjamin T. Cameron, as executors of Thomas Cameron, deceased. The former dying pending suit, the action proceeded against the survivor. The facts are sufficiently reported in the opinion.

SPEER & SPEER; JOHN S. BIGBY, for plaintiff in error.

B. H. BIGHAM; FERRELL & LONGLEY, for defendant.

BLECKLEY, Judge.

Executors were sued in 1869, upon a note made by their testator in 1859. The will was probated in October, 1859, and the executors qualified. They, with others, were residuary legatees—one of them personally, and the other as trustee for his wife. The will directed the payment of all just debts. It provided for the equal division of the residuum

Amis *vs.* Cameron.

by commissioners, and the executors were instructed to have commissioners appointed for that purpose. The residuary legatees were of full age, and prior to the probate of the will they entered into a written contract in these terms : "We agree to waive the usual legal requirements, forms and ceremonies, in bringing to sale the property of said estate, and hereby authorize and request the executors to close up the affairs of said deceased without the delay usually attendant upon the orders, judgments, and decisions of the court." Under this agreement, which was signed by the executors as well as the other residuary legatees, the executors proceeded, and wound up the estate, which consisted of land, slaves, railroad stock, and other personal property. The personalty, exclusive of the slaves, was ample to pay all the debts, and all were paid except this now in suit. Funds sufficient to pay this were, for a long while, kept on hand. The executors, in due time, advertised according to law, for six weeks, calling upon creditors to render in their claims, and this claim was not presented nor any notice given of it till 1867, before which time the whole estate had been distributed. The distribution was not completed within twelve months after qualification and the grant of letters testamentary. Ample means to pay this debt were retained until after that lapse of time. In the distribution, one of the executors received the testator's land and still has it. He also received slaves and money. The other executor, as trustee for his wife, received his equal share in money or personal property.

There is no doubt that this creditor could follow the assets, and compel payment of his demand by the legatees, *pro rata,* out of the effects which they received from the estate of his debtor; but the question is, can he recover a judgment against the executors, as such, over their plea of *plene administravit.*

1. It is well settled in Georgia that heirs or legatees, when all of age, may, as among themselves, settle up estates as they choose, and their adjustment will be good against one another and against mere strangers, at least in equity : 34 *Georgia Reports,* 152 ; 31 *Ibid.,* 753 ; 29 *Ibid.,* 585 ; 36 *Ibid.,* 184 ;

23 *Ibid.*, 142 ; 13 *Ibid.*, 478 ; 6 *Ibid.*, 443 ; 3 *Kelly*, 422. This rule we have no purpose or wish to disturb ; but we cannot recognize the extension of it, so as to bind creditors by mere *contract* administration, unless they have assented to it. They are entitled to call for legal administration, and here there has been none.

2. The executors took upon themselves the legal obligation to ʾexecute the will according to law. They qualified, and then they cut loose from the ordinary and from the control of the statute, and put themselves under the private contract into which they had entered with the other legatees. They returned no inventory, no appraisement, no sales, no receipts, no disbursements. They made no return to the ordinary of any kind. The administration which they conducted was not even carried into the ordinary's office, much less carried through it. It was not the public, official administration which the law requires, but a private administration, governed by the wishes of themselves and their co-legatees instead of the law of the land. It was commenced, prosecuted and concluded wholly outside of the office which the law had appointed for it to pass through. A creditor searching that office could not discover what, if any, assets, had come to the hands of the executors. The statute under which they qualified (Cobb's Digest, 188 ; 8 *Georgia Reports*, 399,) required them to return an inventory, on pain of being held liable to creditors as executors *de son tort*. This stringent statute they violated. It is true they published a legal notice to creditors warning them to render in their demands, but against what assets were they to make claim ? The executors had charged themselves with none in that place where creditors, in all cases, as the law then stood, were entitled to look for the information. If they had complied with that requisite of the statute, this creditor, who may not have seen their advertisement, might have discovered that they were in a situation to make payment. The law, at least, entitled him to that means of information, as well as to the published notice. He did not respond to the notice, and they did not comply with the

Amis *vs.* Cameron.

law.  Upon what principle can they, who were themselves in default, insist that they shall stand discharged because of his failure?  On the facts in the record, we do not think the executors have supported their plea.  They were chargeable with a large amount of assets, for which they have not legally accounted.  They are to be deemed, in law, as having them still in hand, and are responsible for their production to satisfy this creditor.

3. The court, on the trial, made a charge to the jury on the subject of evidence which we cannot indorse.  The conflict, if any, was between the plaintiff's witness on one side, who was disinterested, and the defendants themselves, on the other. We do not see that there was conflict; but suppose there was, the jury could not be bound to believe or disbelieve.  They were the judges of credibility, and had a right to take *interest* into account, as well as the elements mentioned by the court. Opportunity, means of information, number, interest, are all to be considered; but at last the jury must be free to weigh the evidence, credit or discredit the witnesses, find out the truth, and follow it: 39 *Georgia Reports*, 597; 42 *Ibid.*, 64; 43 *Ibid*, 283.  Even putting interest out of the question, the court hampered the jury rather too much on the consequences of mere number: 10 *Georgia Reports*, 184.

The charge in relation to positive and negative evidence was not error in itself, and to one point presented at the trial it seems to have been applicable.

What the court stated to the jury as to the complication and difficulty of the case cannot be harmonized with the views which we have presented, but to pronounce it error in law would be to treat it with a seriousness out of proportion with its importance.  Such remarks are usually intended to tone the minds of jurors to a sufficient pitch of gravity; and perhaps the only effect is to make them investigate the facts more carefully, and form their verdict with greater deliberation.  If so, they are harmless.

The assignments of error are numerous, and we have not

dealt with them all separately, but the principles laid down will be found to control them substantially.

Judgment reversed.