## KINNEBREW *vs.* THE STATE OF GEORGIA.

1. The rule of the common law that in misdemeanors there are no accessories before the fact, but that all who would be such in felonies are principals in misdemeanors, is still of force in Georgia.
2. A general authority by an employer to his clerk to sell unlawfully, will render him answerable criminally for any single sale made by the clerk in pursuance of such authority.
3. Whether a general authority from an employer to his clerk will suffice to render the former answerable criminally for an unlawful sale made by the latter, is a question of law; and it is also a question of law whether the jury would be legally authorized to infer the existence of a general authority from a given state of facts, the logical sufficiency of the facts to warrant the inference, and the existence of the facts themselves, being left to the jury for their determination.
4. The sale of nerve tonic by the accused, or by his clerk under his authority and direction, is relevant, where there is evidence tending to show that nerve tonic is rye whiskey.
5. It is not a law of belief in or out of the jury-box, that truth is with the majority rather than the minority, though all who think they have it, and try to declare it, be equally credible.

October 26, 1887.

Principal and accessory. Master and servant. Criminal law. Evidence. Liquor. Witness. Before Judge VAN EPPS. City court of Atlanta. June term, 1887.

Kinnebrew was tried on an accusation of unlawfully selling liquor. The evidence for the State showed as follows: Twice on one evening three persons went to defendant's wine-room, and one of them called for "nerve tonic." They were furnished with rye whiskey by the defendant,

Kinnebrow *vs.* The State of Georgia.

and paid him for it. Three days later, two witnesses went to the same place twice in one evening, and bought rye whiskey, called "nerve tonic," from defendant's barkeeper, defendant being absent. The general local option law was of force.

The substance of defendant's evidence was as follows: The "nerve tonic" sold on the occasion referred to, was not whiskey, and is not intoxicating. If it contains any alcohol, it is not enough to intoxicate. It does not taste like whiskey. One witness had drunk twenty or twenty-five drinks of it in a day without intoxicating effect. A witness applied to the barkeeper for whiskey, and was told that it was not sold there. None was, in fact, sold then or at any other time.

The defendant was found guilty. He moved for a new trial on the following grounds:

(1) The verdict is contrary to law and evidence.

(2) The court refused to charge that, if a sale of liquor was made by the barkeeper in the absence of defendant, the latter could not be convicted, unless he was proved to have commanded or procured the sale to be made, and was charged in the accusation as accessory before the fact.

(3) The court refused to charge that, if several of a party who drank together swear that what was drunk was whiskey, and several swear that it was not, both parties are swearing positively; and if the witnesses are equally credible, the preponderance is on the side of the greater number.

The fourth ground is stated in the decision; the fifth was not argued. The sixth complained of the overruling of defendant's objection to evidence of a sale by the barkeeper in defendant's absence. The motion was overruled, and the defendant excepted.

JOHN C. REED and RHETT & O'BRYAN, for plaintiff in error.

H. C. GLENN, solicitor, by C. D. HILL, for the State.

BLECKLEY, Chief Justice.

Whether or not the common law rule that in misde-meanors there are no accessories before the fact, has been abrogated in Georgia by statute, is not settled by any decision heretofore made by this court. In *Hately vs. The State*, 15 *Ga.* 346, as appears both from the report and the original record (which we have examined), there was no evidence either that Hately was present or that he pro-cured, counselled or commanded his clerk to do the unlaw-ful act which constituted the misdemeanor, or knew any-thing about it. Moreover, the judgment rendered by this court, (which, as recorded on the minutes, we have also examined,) was put expressly upon the want of sufficient evidence on which to base the instructions given to the jury. There was certainly no occasion, therefore, for the member of the court who wrote out the opinion to distin-guish between principals and accessories, or to say, as he did in a head-note, that "he who procures, counsels, com-mands or incites his clerk or agent to commit a crime, in his absence, is guilty as an accessory before the fact, and cannot be convicted upon an indictment which charges him with having jointly, with his clerk, committed the of-fence, as principal."

"The head-note to a case, whether put there by the re-porter or the judge who writes out the opinion, is so far law only, as it is sustained by the judgment of the court in the case." *Denham vs. Holeman*, 26 *Ga.* 182. LUMP-KIN, J., says, p. 190, "While it is not true that the reporter puts the head-notes to the cases, it is true that the head-note *is not law, except so far as it is warranted by the judgment of the court upon the facts of the case.*"

That the *obiter* of Judge STARNES in *Hately vs. The State* has not been adopted, either by his contemporaries or his successors, is manifest. In *Lewis vs. The State*, 33 *Ga.* 137, by LUMPKIN, J., the question is asked, " Was the

charge of the court, that in misdemeanors there were no
principals in the second degree, nor accessories, right?"
And the answer is, "We are inclined to think that our
code did not intend to change the common law in this re-
spect." In *McCoy vs. The State*, 52 *Ga.* 289, by TRIPPE,
J., attention is called to *Lewis vs. The State*, but the case
not requiring a decision upon the precise question, it was
left undetermined. It was afterwards determined, how-
ever, as to a principal in the second degree, in *Hansford
vs. The State*, 54 *Ga.* 55, in which the indictment charged
several persons as the actual perpetrators, and that Hans-
ford was "constructively present aiding and abetting, and
did then and there hire and procure the said (actual per-
petrators) the assault and battery aforesaid, in manner
and form aforesaid, to do and commit." Hansford de-
murred to the indictment because barred by the statute of
limitations, because principals in the second degree are not
recognized in misdemeanors, and because a principal in
the second degree cannot be tried before the principal in
the first degree. The last ground was obviously not good.
*Boyd vs. The State*, 17 *Ga.* 194; *Williams vs. The State*,
69 *Ga.* 29(7). The first ground was sustained by the
court; and the second was ruled to embody a sound prop-
osition, but one not available in the particular case, for
the reason that the facts alleged as to Hansford made him
a principal in the first degree. And it is plain that this
consequence would ensue from the proposition itself; for
if there can be no principal in the second degree in mis-
demeanors, then a person charged as being present, aiding
and abetting in the commission of a misdemeanor, must be
a principal in the first degree or nothing; and any descrip-
tion of him as "principal in the second degree" would be,
as the court held, mere surplusage. Though in its facts
the case of Hansford is not a *controlling* authority, it is a
*guiding* authority, on the present question; for a principal
in the second degree is analogous to an accessory, and in-
deed was formerly denominated an accessory *at* the fact,

We may well reason that if our code does not in misde-
meanors require the distinction between principals to be
noticed, neither does it require to be noticed the distinc-
tion between principal and accessory before the fact.
Code, §§4305, 4306, *et seq.*

The case of *Faircloth vs. The State*, 73 *Ga.* 426, though
not perhaps demanding any deliverance on the subject,
the person indicted having been present at the alleged
sale by his clerk, and having contributed to its accom-
plishment, announces the rule of the common law touch-
ing accessories in misdemeanors. So does *Groves vs. The
State*, 76 *Ga.* 814. Thus, every time the subject has been
mentioned in the reports, so far as we are aware, since
*Hately vs. The State* was decided, the tendency of the ju-
dicial mind has been away from the *dicta* promulgated in
that case and towards the common law. The reply we
make to the learned historical argument with which the
able counsel for the plaintiff in error favored us, is, that
had we been here " in the beginning," and had he been
here to make it, we should probably have yielded to it;
but a contrary construction has so long prevailed, and so
many hundreds, if not thousands of cases, have in the su-
perior court practice been rested upon it, nothing but the
clearest light of truth would now justify a repudiation of
the common law rule. Another consideration is, that
courts, even when they have the earliest and best oppor-
tunity, rarely struggle to get away from the common law,
but delight in clinging to it like young children to the
mother's breast. There certainly never has been in our
statutes or codes any express abrogation of the rule with
which we are dealing, and the safest and soundest adjudi-
cation we can now make is that there has been none by
implication, and so we decide.

What has been said disposes of the 2d and 6th grounds
of the motion for a new trial, and also of the first objection
to the charge of the court.

2, 3. Other objections to the charge were made, one of

which was that it intimated an opinion as to what had been proved, and as to the guilt of the accused. In dealing with this objection, it is necessary to have before us the exact legal import of the instructions complained of, but not all of their exact language. I shall, therefore, for the sake of brevity, omit non-essential particulars in transcribing from the 4th ground of the motion for a new trial, and condense the substance as follows: " If the defendant kept a wine-room, and had nerve tonic in stock, and himself sold it, the jury would be authorized to infer that he had it there for sale in the course of his business, and if a few days after he sold his clerk sold some, the jury would be authorized to conclude, in the absence of proof to the contrary, that the clerk had a general authority from the defendant to sell it. A general authority is enough; specific authority to sell in the particular instance, or actual knowledge and formal permission touching that instance need not be shown. Authority to the clerk may be inferred from the course of conducting business in defendant's wine-room, if known to him, and so far as known to him, and if he himself, in the course of business, sold a particular liquor kept in his stock in his trade, the jury may presume authority in the clerk to make similar sales, unless there is something in the facts and circumstances to rebut the presumption. If the defendant's clerk sold nerve tonic, the fact, if it be a fact, that defendant himself sold nerve tonic may be considered by the jury in determining whether the clerk acted under his authority."

The central doctrine of this instruction is, that a general authority by an employer to his clerk to sell unlawfully, will render him answerable criminally for any single sale made by the clerk in pursuance of such authority. Undoubtedly this is sound doctrine. Moreover, any possible question as to its soundness is one of law, and not of fact. It is also a question of law whether the jury would be legally authorized to infer the existence of a general authority from a given state of facts. Certainly, the logical

sufficiency of the facts to warrant the inference, and, also, the existence of the facts themselves, ought to be left to the jury for their determination. This was done in the present case, for the judge, on beginning his general charge said : " The court intimates and expresses no opinion as to what facts have been proved by the evidence, or as to what inferences are to be logically deduced by you from the ·facts and circumstances in proof, but submits the whole question of fact, and every question of fact, to you for your determination, without judicial interference." This, for additional caution and greater emphasis, was repeated at the conclusion of the charge as set out in full in the record.

· Between these two announcements, the judge discussed the subject of what sort of authority. granted to the clerk to violate the law by an illegal sale would bind the employer. In so doing, he stated that if there was a general authority, it would render the employer responsible for · any particular act of sale,—that it did not require a particular authority for that act. He enumerated certain facts, and stated that if the jury found them to exist, they were authorized to infer from them a general authority,—: that *they* might presume the existence of such authority,: not that the law presumed it. In so doing, we think he· was merely announcing something that the law permitted them to do, and not instructing or intimating that they should do it; they were free, under the general instructions already given, and afterwards repeated, to make all inferences of fact for themselves.

. The judge cannot pilot the jury in their passage by inference from fact to fact, but he can point out the line of transit which the law authorizes them to follow if they think the facts in evidence sustain them in taking that route. Presumptions of law are conclusions and inferences which the law draws from given facts. Presumptions of fact are exclusively questions for the jury, to be decided by the ordinary test of human experience. Code, §3752.

This plain distinction only needs to be understood, and applied with due discrimination, to reduce to the minimum all just complaint of encroaching on the province of the jury in the matter of drawing inferences. Doubtless, all presumptions of law not originating in statutes were once presumptions of fact, and gradually developed into presumptions of law by a process of evolution; and most probably many inferences and conclusions destined to become presumptions of law in the future, are now in the formative stage, passing and repassing through the jurybox. Before any presumption, not manufactured by the legislature, can mount to the bench, it has to serve for a long season on the jury, and be trained for judicial administration. But there is, touching most inferences of fact, a question of law for the court as well as one of logic for the jury, for in some instances the law, though it will not itself draw a given conclusion from given premises, will allow the jury to draw it if they are convinced from the evidence that it ought to be drawn; but in other instances it will neither draw the conclusion nor suffer the jury to draw it. Now the judge may, if he can, always distinguish these two classes of instances, one from the other, and tell the jury to which class the case in hand belongs. To instruct them that they are legally authorized to infer one thing from another, or from certain others, but that they are to decide for themselves both whether the given premises are true, and whether the inference can and ought in fact to be made, is only to say that the law permits them to reason in the manner indicated, if they determine that the evidence and the ordinary test of human experience warrant them in so doing. It is but to tell them that the law will be satisfied if they are, and that they will not have done a vain thing. No doubt there is danger of intimating an opinion, or of leading the jury to think that an opinion is intimated, though the purpose be only to discriminate between legal and logical sufficiency; and this danger is not lessened, but rather increased, by

the fact that in most instances the one kind of sufficiency exists wherever the other does. But danger is no interdict on duty, and a charge is not erroneous for pointing out that the jury are authorized to infer one thus-and-so from another thus-and-so, provided they believe from the evidence that the first thus-and-so is established, and provided they further believe that the second thus-and-so is a reasonable and proper inference to be drawn from the first. And the equivalent of this is all that was done in the present case, if the whole of the charge be taken together; and that it must be so taken has been ruled in some dozens of cases, to be found by looking through the indexes to our reports under the head, "Charge of the Court."

Striking examples may be seen in *Hanvey vs. The State*, 68 *Ga.* 615, and *Moon vs. The State, Id.* 697, where the context was invoked for explanation, the part of the charge excepted to being, in substance, that if *a* is used to cause *b*, and is likely to cause it "when used in the manner the proof shows it was used, the law presumes" *c*. It was held that this, properly construed, was no intimation as to what was proved—no invasion of the prerogative of the jury. And see *Everett vs. The State*, 62 *Ga.* 72.

On the general question as to when an opinion is intimated, and when not, I have analyzed numerous illustrative cases, and will now give the result. If facts *a b c* be proved (they were mere evidentiary, not constitutive facts), "you are authorized to find the defendant guilty." If, etc., "the law presumes the defendant guilty, but this presumption may, like all others, be rebutted. Whether the facts proved raise this presumption, or whether, if raised, such presumption has been rebutted, is for you to decide from the testimony." This charge had a qualified approval by the court, which said, "The court used a strong expression when he said that 'if the above facts be proved by the testimony, the *law* presumes the defendant guilty'; it would have been better, put in another way,

that the law would authorize the jury to presume the defendant guilty." *Ivey vs. The State*, 23 *Ga.* 579, 582. " If you believe the evidence of (certain named witnesses), you ought to find for the plaintiff." Disapproved. *Jarrett vs. Arnold*, 30 *Ga.* 324. If you believe from the evidence facts *a* and *b*, "that would be a strong circumstance to show" fact *c*. Disapproved. *Phillips vs. Williams* 39 *Ga.* 602; *Stephenson vs. The State*, 40 *Ga.* 292. "It is my opinion you can infer" fact *a* from fact *b* " inasmuch as" fact *c* was. Disapproved. *Grant vs. The State*, 45 *Ga.* 477. If facts *a* and *b* existed, "it will be presumed that" fact *c* existed, " if nothing appears to the contrary; but this presumption may be rebutted by any sufficient facts or circumstances, such as" *d*. Disapproved. *Mitchell vs. Mayor and Council of Rome*, 49 *Ga.* 19. If fact *a* appeared before, it appears now, etc. Disapproved. *Deupree vs. Deupree, Id.* 326. That fact *a* " is of but little consequence because" of fact *b*. Disapproved. *Wannack vs. Mayor & Council of Macon*, 53 *Ga.* 165. If fact *a* be true, *b* cannot be recovered, and in this case *b* cannot be recovered. Disapproved. *Dye vs. Denham*, 54 *Ga.* 229. Facts *a b c* being enumerated, " it was not a slight but a strong circumstance from which they could infer that" fact *d* existed. Disapproved. *Warmock vs. The State*, 56 *Ga.* 503. That evidence *a* " would be the strongest attainable " unless evidence *b* could be procured. Disapproved. *Davant vs. Carlton*, 57 *Ga.* 491. " If that was the evidence, what more deliberation can a man have?" " These are facts from which a deliberate intention may be inferred." Disapproved. *Hayes vs. The State*, 58 *Ga.* 48. When an act is threatened, and immediately done as threatened, the presumption is that it was done by the person who made the threat, and it is incumbent on him to show that he did not do it. Disapproved. *Fulton vs. The State, Id.* 226. If you believe facts *a b*, " that is a circumstance from which you may conclude" fact *c*. Disapproved. *Hayden*

*vs. Neal,* 62 *Ga.* 367. " I am of the opinion " that such a thing has not occurred. Disapproved. *Jones vs. The State,* 63 *Ga.* 458. " We don't know " fact *a* or *b* or *c* or *d;* "it was" *e.* Disapproved. *Headman vs. Rose, Id.* 465, 466. If facts *a b c* (all the essential facts) be true, " he is guilty." Approved. *Kitchens vs. The State,* 41 *Ga.* 217. And see *Hill vs. The State,* 63 *Ga.* 578; *Holifield vs. White,* 52 *Ga.* 567; *Williams vs. McMichael,* 64 *Ga.* 445; *Nixon vs. State,* 75 *Ga.* 862. " It seems to me that if it be shown by the evidence that " facts *a b c* were true, " the law will presume " fact *d.* Approved. *Hagar vs. The State,* 71 *Ga.* 164. If facts *a b* were true " these were circumstances from which they (the jury) might infer " fact *c.* Approved. *Johnson vs. Dooly,* 72 *Ga.* 298, 299.

4. The objection that the charge touching nerve tonic was not relevant, because that article was not specified in the accusation, nor proved to be such liquor as was specified therein, is met by the fact that there is in the record evidence tending to show that nerve tonic is rye whiskey. It matters not what name dealers or consumers apply to the illicit fluid, so long as the arbitrary name can be translated into such familiar English as "rye whiskey." It is the liquor, and not the name, which gives character to the sale, and renders it lawful or unlawful.

5. The request to charge set out in the third ground of the motion for a new trial sought to have the jury instructed that where several witnesses, equally credible, all of them testifying affirmatively, differ as to the fact, the preponderance is with the greater number.

No doubt the jury may count the witnesses if they think proper to do so, but they are not, as matter of law, bound to do it, even when they think them equally credible. On such a question as the taste of a particular beverage, witnesses may be equally truthful, without being equally reliable. We cannot lay it down as a law of belief that truth is with the majority, rather than with the minority. Such a rule could not be safely acted upon save where the dis-

proportion is considerable, even were it certain that all who think they have truth and attempt to declare it are, each to each, precisely equal. Double the number, as two to one, will incline the scale. 1 Wharton's Evidence, §416; *Dowdell vs. Neal*, 10 *Ga.* 148. But the effect of numbers is rather one of general logic than of law, and while the court may instruct on the subject, the jury may be left to deal with it in the light of their own reason and experience. 1 Whar. Ev. *supra*, §417; *Evans vs. Arnold*, 52 *Ga.* 174; and see *Amis vs. Cameron*, 55 *Ga.* 449; *West vs. Wheatley*, 59 *Ga.* 560.

We have thus disposed of all the legal points that were argued before us, and as we deem the verdict amply supported by the evidence, our conclusion is that the motion for a new trial was properly overruled.

Judgment affirmed.