## 6532.   McBREARTY v. MAYOR AND COUNCIL OF MACON.

The evidence was sufficient to authorize a conviction under the municipal ordinance making it unlawful to keep for sale intoxicating liquor in the city.

DECIDED JUNE 3, 1915.

Certiorari; from Bibb superior court—Judge Mathews.   March 12, 1915.

*John R. Cooper,* for plaintiff in error.

*Walter Defore,* contra.

WADE, J.   The various assignments of error set out in the certiorari, other than the complaint that the verdict is contrary to the evidence and without evidence to support it, need not be discussed, since the questions raised thereby have been so often adjudicated by our Supreme Court and by this court that any discussion thereof would serve no useful purpose.

The accused was convicted on the charge of having violated an ordinance of the city of Macon, making it unlawful to keep for sale intoxicating liquors within the corporate limits.   The entire evidence adduced at the trial, as appears from the defendant's petition for certiorari and the answer of the recorder, with the statement of the defendant, was as follows:   Dave Riley, a police officer, testified:   "I made a raid yesterday afternoon about five o'clock, at the place on Monroe street called 'the John McBrearty place;' and I found eight pints of whisky in the harness-house in the place; and I arrested two or three negroes there and put them in jail.   I arrested this young negro Charlie Mathews and put him in jail.   I found these two bottles of whisky, one pint and one half-pint full on these negroes' person.   I raided the grocery-store and I found no whisky there except these two bottles found on the negroes that I arrested and put in jail.   Charlie Mathews, one of the negroes, was not there when the raid was made."   Luther Scott (colored) testified:   "On yesterday I bought this bottle of whisky from Charlie Mathews in this place; they called it Mr. McBrearty's place.   I paid 30 cents for it.   This little boy that I bought the whisky from is not there all the time.   There is another negro there that stayed there that I bought whisky from.   He ran away yesterday afternoon.   I was locked up last night to be a witness in this case.   I did not turn State's evidence to get out.   But I am in prison now; I have been, but I suppose I will gain my liberty."

Ben Stafford (colored) testified: "I was in the place on Monroe street yesterday afternoon and bought a bottle of whisky from this boy, Charlie Mathews; he was staying there. There was another negro in there when I bought the whisky, who was grown, and he run away. This is the only whisky that I ever bought from this boy. I was locked up last night to be a witness in this case. I did not turn State's evidence to get out. But I am in prison now; I have been, but I suppose I will gain my liberty." Charlie Mathews, a co-defendant, made the following statement: "I did not sell any whisky to these negro men who have sworn here against me. I have never sold any whisky there to anybody. I stay there and clerk in the grocery-store, but I have never sold any whisky. I was not there at the time the raid was made by the officers of the city." John McBrearty, the defendant then on trial, made the following statement: "I am not guilty of the accusation. I did not sell any whisky. I know nothing about the boy, Charlie Mathews, selling any whisky at my grocery-store. The officers made a raid out there yesterday afternoon about five o'clock, but I have no knowledge of the sale of any whisky at that place. I did not sell it or authorize it to be sold. The negroes that were locked up walked into the front door of the store, and went to the back door and took the whisky out of their pockets and started drinking it. These two negroes, Luther Scott and Ben Stafford, that I refer to are the witnesses who swore against the negro Charlie Mathews." The recorder answered that the petition "sets forth fairly what occurred at said trial, except the witness Luther Scott testified that the boy that he got the whisky from in this place worked for the defendant, and that he had bought whisky there before."

It is insisted by counsel for the plaintiff in error that this evidence raises merely a suspicion of guilt against the accused, and does not authorize the inference of his guilt, drawn by the recorder. The evidence is somewhat weak and unsatisfactory, and is circumstantial so far as it tends to disclose the purpose of the accused in having the liquor at his place of business; but there were circumstances in proof from which the recorder might properly have inferred that he kept the liquor at his place of business for the purpose of sale, and that this hypothesis was supported by the proved circumstances to the exclusion of all other reasonable hypotheses. It is insisted first by the plaintiff in error that there was no proof

that any intoxicating liquor was actually stored by him. From the evidence of Riley it will be observed that eight pints of whisky were found "in the harness-house in the place" known as the John McBrearty place. No whisky was found in the grocery-store conducted by McBrearty, but, from the testimony of this witness, the "harness-house" was evidently a component part or a room of the place conducted by McBrearty; and therefore the court was authorized in finding that the whisky was in his place. McBrearty himself, in his statement, did not deny that the "harness-house" referred to was in fact under his control and constituted a part of his store or place of business, nor did he deny that the whisky found by the officer was his property and in his possession, though he said he had no knowledge of the *sale* of any whisky at that place, and neither sold whisky nor authorized it to be sold. The defendant's only witness, Charlie Mathews (who, according to his own testimony, was a clerk in the grocery-store), also failed to deny that the "harness-house," where Riley testified he found eight pints of whisky, was under the control of the defendant or was a part of his grocery-store, or that whisky was found there. So it may be rationally concluded that the recorder was authorized to find from the testimony of Riley, wholly uncontradicted, that eight pints of whisky were found in the possession of the accused at his store or place of business within the corporate limits of the city of Macon.

As to the establishment of any connection between the sale of whisky made at the defendant's storehouse by his clerk or clerks and the defendant himself, and therefore as to the purpose for which he had the whisky, the evidence is not so direct, but there was enough shown to authorize the conclusion, reached by the recorder, that the sales made were made with the knowledge and consent of the defendant. Except by way of introduction to what follows, it is unnecessary to advert to the proposition that in misdemeanors all who participate are principals. It was said by Chief Justice Bleckley, in *Kinnebrew* v. *State*, 80 *Ga.* 232 (2, 3), 237 (5 S. E. 56), that "a general authority by an employer to his clerk to sell unlawfully will render him answerable criminally for any single sale made by the clerk in pursuance of such authority;" and "whether a general authority from an employer to his clerk will suffice to render the former answerable criminally for an unlawful

sale made by the latter is a question of law; and it is also a question of law whether the jury would be legally authorized to infer the existence of a general authority from a given state of facts, *the logical sufficiency of the facts to warrant the inference, and the existence of the facts themselves, being left to the jury for their determination.*" (Italics ours.) It must be conceded that the determination of the facts as to the various sales of whisky was a question solely for the recorder; and the logical sufficiency of the facts in evidence to warrant the inference drawn therefrom was also for determination by the recorder. It only remains then for us to say whether a jury in this case would be legally authorized to infer the existence of a general authority from the master to the servant to sell, from the facts as found by the recorder. Whisky put up in eight pint bottles was found in the defendant's store. The very fact that the whisky was found in containers of this size was in itself a suspicious circumstance, indicating that it was thus bottled probably for convenience in making quick sales thereof. Scott testified that the bottle of whisky found on his person when he was arrested by the officer at the defendant's place of business was bought by him from Charlie Mathews, who was shown to be a clerk working for the defendant in the defendant's grocery-store. This witness testified also that he bought whisky from another negro at McBrearty's place, who "stayed there," but who ran away on the afternoon when the place was raided and the witness was arrested. According to the answer of the recorder, Scott testified distinctly that "the boy that he got the whisky from in this place worked for the defendant, and that he had bought whisky there before." So from Scott's testimony it is apparent that at the place of business owned and controlled by McBrearty, *somebody,* more or less habitually, kept whisky, which was sold to purchasers not only by *one* clerk working for McBrearty, but by *two* different individuals employed by and working generally for him. It has been often held that proof of a sale of whisky by the defendant, or by some one acting for him or by his authority, may tend to show the *purpose* for which the whisky was kept at the defendant's place of business; so that the evidence of Scott, that he had bought whisky at McBrearty's place of business "before," tended to indicate or illustrate the purpose for which McBrearty had in his possession at the time of the raid the eight pints of whisky found in that part

of his store called the "harness-house." Stafford also testified that he bought a bottle of whisky from Mathews, the clerk of the accused, on the same afternoon; so that the proof shows two sales of whisky at McBrearty's place by one of his clerks during the afternoon of the raid, and also shows that one of these witnesses had bought whisky at the same place before that time (how often he does not say) from still another clerk who worked for the accused. Of course it is *possible* that these whisky sales may have been conducted by the two clerks in McBrearty's place of business and literally under his nose, without his knowledge or consent, and that they, and not he, may have stored in that part of the store called the "harness-house" the eight pints of whisky found by the officer, but it is hardly probable that this was the truth of the case; and certainly, while the evidence did not *demand* a judgment of guilty, the recorder had the right to infer, from the facts in evidence, that McBrearty had given a general authority to his clerk to sell liquor at his place of business, and therefore that the whisky found stored at that place was in the possession of McBrearty himself, and was there kept for the purpose of sale.

"A clerk who in a municipality sells intoxicating liquor kept by his employer in his place of business may be convicted of violating the municipal ordinance forbidding the keeping of liquor on hand for the purpose of illegal sale." *Toney* v. *Atlanta,* 6 *Ga. App.* 356 (64 S. E. 1106). So, also, an employer may be convicted of violating such an ordinance, where the testimony shows a sale of intoxicating liquor kept at his place of business, if the facts and circumstances proved warrant the inference that the sales were made under a general authority from him, or by his consent and approval and for his benefit. It was said in *Rooney* v. *Augusta,* 117 *Ga.* 709 (45 S. E. 72), that "a sale of liquor by a person in charge of the regular place of business of a liquor dealer, at a time when a sale could not be lawfully made, will authorize a conviction of the liquor dealer for a violation of an ordinance of the character above indicated [an ordinance prohibiting the having or keeping of intoxicating liquors within the corporate limits for the purpose of illegal sale], when on the trial the accused does not make it appear to the satisfaction of the court that the person in charge of the place of business was not authorized to make the sale." When the testimony showed that the sale was made in the place of business

of the accused, and was made by his clerk, who, under his own statement, had general authority to sell goods in his grocery-store, a strong inference was created that the clerk had authority to sell the whisky which the proof showed he did actually sell, notwithstanding the presumption of innocence existing in behalf of the accused; and we can not say that the recorder was not justified in disregarding the attempt on the part of the accused, by his statement alone, to show that his clerk "was not authorized to make the sale" or sales, especially when the improbability of their being made by the clerk without the knowledge of the proprietor is considered. As was said by Russell, C. J., in *Bragg* v. *State,* 15 *Ga. App.* 631 (84 S. E. 82): "The circumstances were certainly sufficient to raise such a presumption that the actual seller was an agent of the defendant as to shift the burden and call for explanation at his hands and proof of the fact that the party making the sale was not his agent." No stronger presumption of innocence exists in behalf of one accused of the violation of a liquor law than in favor of those accused of other offenses.

This court, in *Groves* v. *State,* 8 *Ga. App.* 690 (70 S. E. 93), speaking through Russell, J., who delivered the opinion for the court, said: "Though there was no direct evidence that the defendant directed or authorized the sales of the intoxicants, which were proved to have been made by his employees, the circumstantial evidence to that effect is sufficient to exclude any other reasonable supposition. All of the circumstances illustrating the conduct of the defendant's business and his familiarity with its details, as well as his frequent presence and close personal superintendence and supervision of his places of business, where intoxicating liquors were sold, authorized the jury to infer that the unlawful sales were made with his consent; and this in spite of the fact that he had forbidden his salesmen to violate the law. If the jury had found (as the circumstances of this case would have warranted them to find) that the defendant was obliged to know that his employees were disobeying his oral instructions, and yet retained them in his employ, the jury were authorized to infer that his instructions to his employees were not given bona fide, or with the intention that they should be obeyed, but were given merely for the purpose of preparing a defense if he should be detected in a violation of the law." It was held in that case that because the facts and circum-

stances illustrating the conduct of the defendant's business and his familiarity with its details, as well as his frequent presence and close personal superintendence and supervision of his places of business where intoxicating liquors were sold (apparently he had more than one place of business and therefore could not at all times personally conduct or superintend *any one* place), authorized the jury to infer that the unlawful sales were made with his consent, and this notwithstanding the fact that he had actually *forbidden* his salesmen to violate the law in the sale of liquor. In the case under consideration, while it does not appear from the evidence how close was the supervision McBrearty exercised over the conduct of his grocery business, it may be reasonably inferred that he was there a large part of the time, if not all the time, since the record does not disclose that he had any other place of business, and the negro clerk Charlie Mathews, who worked for him regularly in the grocery-store, was a mere boy, to whose care it can hardly be assumed he would have left the management and conduct of his store; and it does not appear that he went through the idle form of forbidding his clerk Mathews to sell liquor at his place of business, which he himself was actually in charge of, and where, therefore, any sales made would almost of necessity be made with his knowledge and consent. The case as made out against McBrearty is, so far as disclosed by the facts recited in the opinion of this court in the *Groves* case, certainly as satisfactory as that against Groves, which this court sustained, holding that since the defendant retained in his employ the clerks who were disobeying his instructions not to sell whisky, the jury were authorized to infer that the instructions were not given with the intention that they should be obeyed, but were given merely for the purpose of preparing a defense in case the defendant was detected in a violation of the law. The evidence in the present case discloses that the negro boy Charlie Mathews had been for some indefinite time in the defendant's employment; and, since the sales of whisky made by this boy were necessarily almost under the eye of the defendant, the recorder was justified in concluding that the defendant had knowledge thereof; and since the defendant did not discharge Mathews but retained him in the same employment even after the raid and the consequent exposure of his actions, and up to the day of the trial, and it nowhere appeared that the defendant had forbidden him to sell intoxicants, the re-

corder was warranted in further concluding that the sales were made by the clerk not only with the knowledge and consent of his employer, but for his benefit and by his express direction even.

Finally, it has been often said by this court that where one is convicted of the violation of a municipal ordinance, and the judgment is attacked on the ground that it is not supported by evidence, and the judge of the superior court has approved the finding of the municipal court, so far as such an attack on the evidence is concerned, this court will not reverse that ruling, where there is even slight evidence to warrant the conclusion reached. As we have already indicated, we think the evidence in this case was weak, and yet we can not say that it is insufficient to sustain the judgment of guilty, even though circumstantial evidence alone was relied upon to establish the purpose for which the accused kept the intoxicating liquors at his store. To our minds, as to the mind of the recorder who tried the case, and to the mind of the learned and careful judge of the superior court who reviewed the trial on certiorari, no other reasonable hypothesis is supported by the evidence as a whole than that the whisky found in McBrearty's possession was kept by him for the purpose of illegal sale; that such sales were made on the day the whisky was seized, as well as before that day, by his clerks, acting under and by virtue of at least a general authority from him; and the purpose of the keeping was therefore established.

*Judgment affirmed. Russell, C. J., dissents.*