# Richmond

## HANIE WINCKLER v. COMMONWEALTH OF VIRGINIA.

### January 15, 1931.

Present, All members of the Court.

*Hutcheson & Hutcheson,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

The accused was tried and convicted in the Circuit Court of Mecklenburg county, Va., on April 24, 1930, of unlawfully wounding, cutting, etc., a cow belonging to C. H. and W. B. Gordon, with the intent to injure and kill the said cow. His punishment was fixed by the verdict of the jury at ninety days confinement in jail and a fine of one hundred dollars.

The case is before us upon a writ of error to the judgment of the lower court in overruling the motion of the accused to set aside the said verdict and give him a new trial.

The prosecution was founded upon section 4467 of the Virginia Code of 1924, which is in part as follows: "And if any person unlawfully shoot, stab, cut or wound any horse, mule, or cattle of any person, * * * with intent to maim, disfigure, disable or kill the same, he shall be guilty of a misdemeanor."

The facts as shown by the evidence are these: The accused was a tenant on the farm of S. N. Hutcheson in Mecklenburg county. This farm adjoined that of C. S. Gordon and his sons, C. H. and W. B. Gordon. On March 24, 1930, accused, accompanied by his wife, went from their home to their tobacco plant bed for the purpose of doing some necessary work. The accused took with him an axe, a hammer, and a bucket of nails. After being there for some time he left his wife at the plant bed and returned home to take his tools. Some distance from his home he heard some cattle lowing and bellowing and he

hurried, for he remembered that he had left his cow tied at the front door of his stable. When he reached the place he found the cow down on the ground and entangled in the chain with which she was tied. There were two bulls and eight cows on the scene, some of which were goring and trampling his cow. He stooped to unloose the cow, and, while so engaged, one of the Gordon cows attacked or charged him or his cow, but he threw himself against the wall of the stable in time to avoid being injured. The Gordon cow turned and attacked him or his cow again, when he kicked at her "and threw up his axe which struck her on the side or back." The cow ran off a few steps and fell to the ground. She had a cut or wound near the backbone of considerable size from which she died on the afternoon of the day of the occurrence. It was also in evidence that the Gordon cow had had a calf four days before the injury.

The accused at once sent for the owners of the injured cow and went himself to the home of his landlord to ask that a veterinarian be sent for.

One of the owners, Mr. C. H. Gordon, came and the accused explained the occurrence to him and expressed his sorrow at the result. He stated that he had no ill will for the Gordons and was not angry with the cow but struck at her to defend himself, or his cow, as he thought that he was in danger of being hurt.

The accused was the only eye-witness to the happening and the above statement is gathered from his testimony. His narrative of the event was uncontradicted except inferentially. Messrs. C. H. and C. S. Gordon testified that the wife of the accused asked him why he struck or killed the cow, stating that she had driven the Gordon cows away the day before with a shuck, and he replied that he did not know. There was evidence that the Gordon cow was of a gentle nature and two witnesses for the prosecution,

C. N. Elam, who knew something of animal husbandry, and J. H. Hightower, testified in effect that they examined the cow of accused on Wednesday after the occurrence and they saw no marks of recent injuries to her.

The testimony of the accused was corroborated by the witness, C. S. Cole, who said he saw the Winckler cow the next morning and noticed that hair was torn from her back, as though done by a pointed instrument, and the witness, George H. Carter, who said that he saw the said cow on the afternoon of the happening and that hair was torn from her back and that the skin was knocked off of one leg which was bleeding. He also said that on that day, March 24, 1930, he was working near the house of the accused and heard the noise of cows lowing and bellowing in that direction, also that he had seen the accused and his wife going from their home in the direction of the plant bed and saw accused returning with an axe and bucket. The evidence warrants the assertion that the accused established a good reputation for truth and peacefulness. The Commonwealth sought to counter the effect of this by testimony to the contrary but it was vague and unconvincing.

■ Giving to the testimony of the Commonwealth all the probative value to which it is entitled, we think it was wholly insufficient to sustain the verdict and we so hold.

The instruction given by the court at the request of the Commonwealth was objected to by the accused on the ground that unlawful intent is an element of the offense charged and such intent must be proven to sustain a conviction.

The oral instruction is as follows: "The law presumes a man to intend the natural and probable consequence of his act and if they (the jury) believe from the evidence that the accused struck the cow with a deadly weapon, the presumption of the law is that he unlawfully intended to maim, disfigure, and kill the cow. The court further

told the jury that there was no evidence in the case to sustain a verdict of maliciously wounding or killing said cow and therefore, the only crime of which the accused could be found guilty under any circumstances was that of unlawfully wounding or killing said cow." (Parenthesis supplied.)

■■ In the case of *Thacker* v. *Commonwealth*, 134 Va. 767, 114 S. E. 504, 505, it was said, "the law can presume the intention so far as realized in the act, but not an intention beyond what was so realized. The law does not presume, because an assault was made with a weapon likely to produce death, that it was an assault with the intent to murder. And where it takes a particular intent to constitute a crime, that particular intent must be proved either by direct or circumstantial evidence, which would warrant the inference of the intent with which the act was done.

"When a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found as a matter of fact before a conviction can be had; and no intent in law or mere legal presumption, differing from the intent in fact, can be allowed to supply the place of the latter."

*Roberts* v. *People*, 19 Mich. 401; *Maher* v. *People*, 10 Mich. 212, 81 Am. Dec. 781; *Vandermark* v. *People*, 47 Ill. 122; *Callahan* v. *State*, 21 Ohio St. 306; *Kunkle* v. *State*, 32 Ind. 220; *State* v. *Meadows*, 18 W. Va. 658; 3 Bish. New Crim. Proced., page 1290; *Kinnebrew* v. *State*, 80 Ga. 232, 5 S. E. 56; *Lacefield* v. *State*, 34 Ark. 275, 36 Am. Rep. 8.

In the case at bar the statute referred to makes the offense consist of an act combined with a particular intent. That intent cannot be presumed but must be proven.

There was no room in the case for the instruction as given. The evidence was quite to the contrary. We think it constituted error which we cannot say was harmless.

The judgment complained of will be reversed, the verdict of the jury set aside, and the case remanded and the trial court directed to discharge the accused from further prosecution under this indictment.

*Reversed.*