HEADMAN *vs.* ROSE *et al.*    ROSE *et al. vs.* ROSE *et al.*

1. Where two parties filed separate *caveats* to the application of a third for letters of administration, each claiming the right thereto, and the cases were appealed and tried together, it was error to hold that each was entitled to six strikes, and for that purpose to have a jury of thirty impaneled.
2. Where a widow applied for letters of administration on her husband's estate, and asked that if she could not be appointed by reason of disabilities, the letters be issued to another selected by her, it was no ground for dismissing an appeal from the judgment of the ordinary that the person so named was the security on her appeal bond.
3. The circuit court of the United States is a court of which the courts of this state will take judicial notice, and admit as evidence the record of its proceedings, when duly authenticated.
4. The city court of Savannah is a court of record, and its minutes are admissible in evidence to show an *ex parte* judgment of naturalization.
(*a*). The contents of a lost record may be proved by parol.
5. An alien woman whose husband became a naturalized citizen of the United States, thereby herself became a citizen, although she may

have been living at a distance from her husband for years, and may never have come into the United States until after his death.

6. If the widow of an intestate is disqualified from taking letters of administration on his estate, she may nevertheless name some person who is qualified for that purpose.

7. A charge which intimates the opinion of the court on the facts will necessitate a new trial.

JACKSON, Justice, concurred specially.

Administrators and executors. Jurors. Practice in the Superior Court. Appeal. Evidence. Courts. Husband and wife. Charge of Court. Before Judge FLEMING. Chatham Superior Court. February Term, 1879.

The following, taken in connection with the decision, sufficiently reports this case:

This is a contest for the administration of the estate of William Rose.

1. H. D. Headman claims it for several reasons. First, he was a friend. Second, he has an interest to the extent of his anticipated commissions as administrator. Third, he has been selected by Elizabeth Black and John Nicolson, alleged creditors of the estate. Fourth, he is a fit and proper person.

2. William H. Rose *et al.* claim the right to select Charles H. Olmstead and have him appointed, because they are nephews and nieces of the intestate and his next of kin.

3. Mrs. Mary Rose claims the administration because she is the widow of William Rose, and is a citizen of the United States, residing in Georgia.

4. The defendant in error, Mrs. Mary Rose, also claims that if she is ineligible to hold office herself, there being no children, she is entitled to the estate, and therefore has the right to name a disinterested person who shall be appointed. Thomas Arkwright was selected by her for that purpose.

The ordinary awarded the administration to H. D. Headman. William H. Rose *et al.* and Mrs. Mary Rose each appealed to the superior court. Both appeals were tried together. On the trial in the superior court the jury found

29

that Mary Rose was entitled to the administration. Both
Headman and Rose *et al.* moved for a new trial; both mo-
tions were overruled, and movants excepted. Among the
grounds of error alleged were the following :

(1.) That the court ruled that each of the three claimants
should have six strikes, and accordingly had a jury of thirty
impaneled. .

(2.) That the court refused to dismiss the appeal of Mary
Rose, the security on her appeal bond being Arkwright, a
party in interest with her.

(3.) That the court admitted in evidence a certified copy
of the judgment of the circuit court for the northern dis-
trict of Georgia, naturalizing Arkwright. [It appears that
he was an Englishman by birth, and this judgment was
offered to show that he had been naturalized. The objec-
tion was that there was no provision of law authorizing, in
Georgia state courts, the introduction of a certified tran-
script from the records of a United States court in the same
state, nor did any law of the United States provide for its
admission.]

(4.) That the court admitted the minutes of the city
court of Savannah to show a judgment naturalizing Wil-
liam Rose, over objections of Headman.

(5.) That the court allowed the clerk of the city court to
testify as follows : There was a petition presented by Rose
which was in due form; all of my blanks were alike ; wit-
nesses were sworn and Judge Millen ordered Rose to be
sworn. I swear the petition was in my office ; I have looked
for it but can't find it. I knew the papers were in conform-
ity to the law and to the satisfaction of the court. It is likely
I drew the application but I cannot swear to it. White may
have drawn the papers. I can't say that I ever read the
papers.

(6.) That the court charged as follows : " If Mary Rose
was the wife of William Rose, by the act of Congress of
1855, she was a citizen of the United States, and not an
alien, and all you have heard here about aliens not having

inheritable blood don't apply to her at all, if she was a citizen of the United States, and I have charged you she was, under the act of Congress of 1855. By her marrying with William Rose, a naturalized citizen, she became a naturalized citizen." * * * * " The domicile of the husband was the domicile of the wife though they were living separate and apart."

(7.) That the court charged as follows : " The next question is, is she a resident of Georgia? This is a question of law in one aspect and a question of fact in another view. I charge you, gentlemen, that the domicile of the husband is the domicile of the wife. Now a good deal has been said here about their living separate and apart, and something has been said that in Georgia you might have two domiciles for a particular purpose. Divorce is one. I forget the other; but in this case I take it that the, separation that took place, we don't know for what cause, or under what circumstances or how, or whether it was intended to be perpetual; it was for a long time, but there ought to be articles of separation that they intended to live apart."

Rufus E. Lester ; Andrew Sloan, for Headman.

J. R. Saussy ; Robert Falligant, for Rose *et al.*

W. S. Chisholm, for Mary Rose.

Warner, Chief Justice.

This case came on to be tried in the court below on an appeal from the court of ordinary of Chatham county, granting letters of administration on the estate of William Rose, deceased. The applicants for letters of administration were Henry D. Headman (who had been appointed temporary administrator), Charles H. Olmstead and Mary Rose. On the trial of the case, the jury, under the charge of the court, returned the following verdict: " We, the jury, find that the deceased, William Rose, was a citizen of

the United States, that Mary Rose is the widow of the deceased, and being a citizen of the United States and resident of the state of Georgia, is entitled to the administration upon the estate in question." A motion was made for a new trial on the various grounds therein set forth, which was overruled, and the other contestants excepted. There were two bills of exceptions filed but both cases were argued together here.

It appears from the evidence in the record that William Rose, the deceased intestate, was born in England and came to Savanah in 1850 or 1851, where he continued to reside until his death in July, 1878, being generally considered an unmarried man. He left an estate consisting of both real and personal property of nearly the value of $57,000.00. It also appears from the evidence, that the intestate, William Rose, was married in October, 1849, to Mary Hargrove (now Mary Rose, the party to this suit), they both being British subjects; that about three months after their marriage Rose left England and came to the United States, never having returned to England since he left there. Mary Rose remained in England, and never saw her husband after 1849, and there was no correspondence between them after about six months from the time he left her, though she knew where he was. It further appears from the evidence, that on the 14th of September, 1878, Messrs. Hartridge & Chisholm filed a *caveat* in the court of ordinary to Headman's application for letters, in the name of Mary Rose, she then being in New York, just arrived there from England, and never having been in Georgia; that she then came to Savannah to reside, and expressed her intention to permanently reside there, and made application for letters of administration in her own name on the estate of her deceased husband, there being no children.

1. The first error complained of by Headman is, that when the case was called for trial and a panel of twenty-four jurors was put upon the parties, two of the caveators appellants each claimed the right to have six strikes, and the

court ruled that each of said caveators was entitled to six strikes, and had a jury of thirty jurors impaneled to try the cause, without the consent of Headman, and each of the caveators was permitted to strike six jurors of said panel, to which ruling of the court Headman excepted. This ruling of the court was error. There is no law that we are aware of to authorize the court to impanel such a jury as it did for the trial of the case, but on the contrary it was in violation of the plain provisions of the 3932d section of the Code, which provides for a panel of twenty-four jurors, from which the parties, or their attorneys, may strike alternately until there shall be but twelve left, which *shall* constitute *the* special jury to try the case. The result therefore is that there has been no trial of the case by a lawful jury impaneled as the statute requires.

2. There was no error in the refusal of the court to dismiss the appeal of Mary Rose on the motion of Headman on the grounds therein stated.

3. There was no error in admitting in evidence the duly authenticated copy of the record of the judgment of the circuit court of the United States for the northern district of Georgia, naturalizing Thomas Arkwright. The circuit court of the United States is a court of which the courts of this state will take judicial notice, and admit as evidence the records of its proceedings, when duly authenticated.

4. The court did not err in admitting in evidence the minutes of the city court of Savannah (it being a court of record) to prove the naturalization of William Rose, 6 Cranch, 178; 5 New York Rep., 284. This was not the record of a suit between parties which is required to be recorded in a separate record book as provided by our Code, but it was an *ex parte* proceeding before the court, and the record of the minutes and proceedings of that court was the proper place to look for its judgment in that *ex parte* proceeding before it. The judgment as found on the record of the minutes of the court of the 2nd of March, 1859, recites that "William Rose, an alien

and a subject of the Queen of Great Britain and Ireland, (and other persons named therein), petitioned the court to be admitted citizens of the United States of America, and it appearing to the court that they have, in all things, complied with the requisitions of the naturalization laws, they were duly admitted citizens of the United States of America, after taking and subscribing in open court the oath of allegiance." This evidence was admissible, the more especially when it had been proved by the clerk of the court then and now, that he administered the oath to Rose in open court, and that the papers relating to Rose's application for citizenship were regular and on file in his office, and that the same cannot now be found after the most diligent search, and Russell, the clerk, was a competent witness to prove the facts about which he testified, in view of the loss of the original papers.

5. Assuming that William Rose was a citizen of the United States at the time of his death, as the jury have found, was his widow, in view of the evidence in the record, entitled to letters of administration on his estate? If she was of sound mind and laboring under no disability, then she was so entitled. Code, §2419.

By the 2492nd section of the Code, none but citizens of the United States residing in the state of Georgia, are qualified to be administrators except as provided in section 2493. Was Mrs. Rose a citizen of the United States, and was she residing in this state at the time of her appointment as administratrix on the estate of her deceased husband? By the 2nd section of the act of congress of 1855, it is declared "that any woman who might lawfully be naturalized under the existing laws, married, or who shall be married, to a citizen of the United States, shall be deemed and taken to be a citizen." When the question was first presented here as to whether Mrs. Rose could claim to be a citizen of the United States under the provisions of that act of congress (having never been in the United States until after the death of her husband), we were all inclined to the opinion that

she could not, but upon a more careful examination of that statute, in the light of the interpretation which has been given to it by the supreme court of North Carolina, in Kane vs. McCarthy, 63 North Carolina Rep., 299, and by the court of appeals of New York, in Burton vs. Burton, 40 New York, 371, and in Kelly vs. Owen, 7 Wallace Rep., 496, in which the supreme court of the United States cite the case of Burton vs. Burton approvingly, we hold and decide, that if Mary Rose was married to William Rose, the intestate, and he was a naturalized citizen of the United States, then she, by the terms and provisions of the act of congress of 1855, was also a citizen of the United States.  In Kelly vs. Owen the supreme court say, "The terms who might lawfully be naturalized under the existing laws, only limit the application of the law to free white women.  The previous naturalization act existing at the time, only required that the person applying for its benefits should be a free white person and not an alien enemy."

6.  As we are constrained to grant a new trial in this case for error in the selection of the jury, and also for error in the charge of the court (which will be hereafter noted), we will state that it is our judgment, that if Mary Rose is the widow of William Rose, deceased, and was residing in Georgia at the time of the trial, then she was entitled to letters of administration on his estate; and further, if she should be disqualified for any legal cause from taking the administration, then, as such widow, she will be entitled to select some proper qualified person to be appointed administrator on the estate of her deceased husband.

7.  The court charged the jury, amongst other things, as follows :  "The next question is, is she a resident of Georgia?  This is a question of law in one aspect, and a question of fact in another view.  I charge you, gentlemen, that the domicile of the husband is the domicile of the wife. Now a good deal has been said here about their living separate and apart, and something has been said that in Georgia you might have two domiciles for a particular purpose.   Divorce

is one, I forget the other, but in this case I take it that the separation that took place, we don't know for what cause or under what circumstances, or how, or whether it was intended to be perpetual; it was for a long time, but there ought to be articles of separation that they intended to live apart." This charge of the court, in view of the provisions of the 3248th section of the Code was error, and this court has no discretion under that section, but is bound to reverse the judgment whenever the court violates it, by expressing or intimating its opinion as to what has or what has not been proved. The question in the case was whether Mrs. Rose was a resident of Georgia at the time of the trial, and the domicile of her husband during his life-time did not make her a resident of Georgia.

Let the judgment of the court below be reversed.

JACKSON, Justice, concurring.

I think that the act of congress of 1855 did not have the effect to naturalize Mrs. Rose, living in England apart from her husband, and never having been in this country at all until after her husband's death, and yield my judgment only to what seems to be the unanimous opinion of the supreme court of the United States in the case of Kelly *vs.* Owen, reported in 7th Wallace.