## CENTRAL OF GEORGIA RAILWAY CO. *v.* GOODWIN.

1. The opinion of a witness is not admissible in evidence when all the facts and circumstances are capable of being clearly detailed and described, so that the jurors may be able readily to form correct conclusions therefrom.

2. On an issue whether a rule of a railway company, which it claimed an employee had expressly contracted to observe, had been rescinded or abrogated by general non-observance on the part of its employees, with knowledge or acquiescence of the company, it was error for the court to refuse to instruct the jury, when duly requested by the company so to do, that they should not consider such non-observance occurring prior to the date of the contract.

3. The charge of the court upon the subject of fraudulent misrepresentations was not subject to the criticism that there was no evidence to support it.

4. On an issue as to whether a party had been induced to sign a contract by fraudulent misrepresentations, the mere failure to specifically instruct the jury that the burden was on him who attacked the contract to show that it was so procured was no cause for a new trial, when the court charged generally that the burden of proof lies upon the party asserting or affirming a fact, and to the existence of whose case or defense the proof of such fact is essential.

5. The charge as to the presumption arising from the failure of a party to produce evidence in his power and within his reach was not applicable to the facts of this case.

Argued April 7, — Decided May 13, 1904.

Action for damages. Before Judge Norwood. City court of Savannah. March 16, 1903.

*Lawton & Cunningham* and *H. W. Johnson*, for plaintiff in error. Plaintiff not without fault: Civil Code, § 2323; *Ga. R.* 83/588; 80/427; 95/301; 103/826. Risk assumed: *Ga. R.* 103/822; 115/624; 122 U. S. 189; 3 S. W. 824; 18 S. W. 151; 11 So. 234; 16 S. W. 413; 13 Pac. 98; 2 Am. & Eng. R. Cas. 126; 12 Id. 241. Cause of injury, failure to use stick: *Ga. R.* 86/15, 600; 95/299; 100/618; 112/917; 115/332; 118/282; 47 Fed. 205; 63 Fed. 228; 15 So. 133; 13 So. 209; 20 So. 132; 60 Fed. 378; 27 New Eng. R. 10. Fraud; burden of proof: Civil Code, §§ 4026, 4029; *Ga. R.* 97/704; 109/679; 103/767; 114/452; 113/189, 361; 76/510, 785; 116/431; 7 Am. & Eng. Enc. L. 112; Bish. Con. § 346. Charge to jury: *Ga. R.* 14/142; 69/441; 114/450; 13 So. 210; 20 So. 67.

*R. R. Richards* and *W. W. Gordon Jr.*, contra.    Coupling-stick rule, or contract:    Civil Code, §§ 2613, 3642; *Ga. R.* 111/878; 115/330; 92/77; 86/418; 66/170; 92/493; 95/592; 80/534; 114/357; 18 S. E. 292; 56 N. W. 521; 80 Fed. 488; 74 S. W. 357; 91 U. S. 646 (23 L. ed. 341); 105 Fed. 554; 71 S. W. 560; 68 S. W. 807; 60 S. W. 2; 51 S. W. 580; 21 S. W. 866; 50 Fed. 718; 91 Fed. 224; 89 Ky. 589; 41 Kas. 724; 88 Va. 648 (37 U. S., L. ed. 151); 157 U. S. 72 (39 L. ed. 624); 152 U. S. 107 (38 L. ed. 373); 170 U. S. 665 (42 L. ed. 1188); 18 L. R. A. 845; Bailey's M. & S. §§ 3371-2, 3469 et seq.; 1 Shear. & Redf. Neg. §§ 202, 207 (b); 65 N. W. 997; 67 N. W. 229; 126 N. Y. 544 (27 N. E. 1042).    Fraudulent alteration :    Civil Code, § 3702; *Ga. R.* 36/479; 31/371; 98/472; 103/767; 69/362; 91/821; 96/120; 102/422.

FISH, P. J.    W. J. Goodwin sued the Central of Georgia Railway Company for damages for personal injuries sustained by him while coupling cars as a yard switchman in the employ of the defendant.    There was a verdict for the plaintiff, and defendant's motion for a new trial being overruled, it excepted.

1. A witness for the defendant testified that he was the general yardmaster of the defendant's yard where the plaintiff was injured, during the time he worked there and for some eight years previously; that witness had been in the yardmaster's business for some ten years; that "lumber properly loaded in the manner I have described will often shift by the momentum, so that in the end it might project over the end of the cars; and I have seen many cars down there with the lumber projecting."    He was asked by counsel for the defendant, " Could or not a man work down there for thirty days in the yard without seeing lumber in that way ? "    He answered, " No, sir, I know he couldn't."    The court ruled out the question and answer, and in the motion for a new trial error was assigned upon this ruling.    The point is clearly without merit, as the general rule is well established that opinion evidence is not competent when all the facts and circumstances upon which the opinion is founded are capable of being clearly detailed and described, so that the jury may be able readily to form correct conclusions therefrom.    *Mayor of Milledgeville* v. *Wood,* 114 *Ga.* 370 ; *Southern Mutual Ins. Co.* v. *Hudson,* 115 *Ga.* 638.    This rule was applicable to the evidence excluded.

2. At the time of entering upon his work for the defendant company, the plaintiff signed the following agreement which was presented to him by the company:

"Central of Georgia Railway Company.    First Division.

November 30, 1898.

"I fully understand that the rules of C. of Ga. Ry. Co. positively prohibit brakemen from coupling or uncoupling cars, except with a stick, and that brakemen, or others, must not go between cars, under any circumstances, for the purpose of coupling or uncoupling, or for adjusting pins, etc., when an engine is attached to such cars or train; and, in consideration of being employed by said Company, I hereby agree to be bound by said rule and waive all or any liability of said Company to me for any results of disobedience or infraction thereof.    I have Red the above carefully and fuly understand it.

"Witness:    John Coleman.                    W. J. Goodwin."

It appears that all of this agreement was printed matter, except the sentence immediately preceding Goodwin's signature, which last sentence was in writing.    On Dec 27, 1898, the plaintiff's left hand was badly mutilated, while he was coupling with his hand, and without the use of a coupling-stick, and was between the cars for the purpose of making the coupling, and while an engine was attached to one end of the train.    The defendant pleaded, as a defense to the action, that the plaintiff was guilty of contributory negligence in violating the provisions of his contract.    One of the grounds upon which the plaintiff sought to avoid the obligation of the coupling-stick rule was, that such a rule, if it ever existed, had been abrogated by reason of its long and continued non-observance, known and acquiesced in by the defendant company.    Counsel for the defendant duly requested the court to instruct the jury as follows:    "If you find from the evidence that the use of the coupling-stick was customarily disregarded by the plaintiff and other employees of the company, I charge you that the plaintiff would not be excused from carrying out his contract—if you find that an agreement was made, — unless you should find from the evidence in this case that the non-observance of the rule as to the use of the coupling-stick had been so general, and had continued for such a length of time, after his employment, as to justify the conclusion that there had been a mutual rescission and abrogation

of the contract." The court struck out of this request the words "after his employment," and then gave the remainder in charge to the jury. In the motion for a new trial error was assigned upon the refusal to charge as requested and in leaving out the words above quoted.

The effect of giving this request, with these words omitted therefrom, was to authorize the jury to find that the custom of disregarding the coupling-stick rule by other employees of the defendant, prior to the making of the alleged contract of the plaintiff with the defendant, would be sufficient to relieve him of its terms. So construed, was the ruling of the court erroneous? This is the sole question presented by the assignment of error. There was evidence of the non-observance of the coupling-stick rule prior to the employment of the plaintiff by the defendant. If the plaintiff and the defendant entered into an express contract at the time of his employment, whereby he specifically agreed, in consideration of such employment, to be bound by the rule not to couple cars except with a stick, and not to go between cars, under any circumstances, for the purpose of coupling, when an engine was attached to them, then we think it is clear that the jury would not be authorized to consider what the custom, with reference to the observance or non-observance of such rule, was prior to the plaintiff's employment and to the making of that agreement. If the plaintiff was justified in believing that there had been a "mutual rescission and abrogation" of the contract, such belief must have been based upon mutual disregard of the rule subsequently to the date of the contract. It would not be possible to have a mutual recission of a contract based upon a custom existing prior to the making of the agreement. Otherwise there would be the anomaly of parties having a mutual rescission in advance of the execution of their contract. So far as the plaintiff was concerned, it may have been the intention of the railroad company, at the time the contract was entered into, to specifically enforce the rule referred to in the agreement, from its date, regardless of any custom which may have existed prior to that time. In the case of Richmond & Danville Railroad Company *v.* Hissong, 97 Ala. 187, 13 So. 209, it appeared that the plaintiff, when he entered the employment of the defendant as a switchman, signed one of its regular applications for service, which contained

rule number 20, providing that: "Cars must not be coupled by hand. Sticks for the purpose, long enough to prevent going between cars, will be furnished on application to yardmaster's office at end of each division. Any employee going in between cars while in motion, to uncouple them, does so at his own risk, and against the rule of the company." The plaintiff was injured in going between cars to couple them. It was held, that as plaintiff had entered into an express stipulation with defendant to abide by such rule, evidence that there was a custom for brakemen, when they found it impossible to couple with a stick, to go between the cars, after having signaled the engineer to stop the train, was not admissible to vary the terms of the rule. The court, through Haralson, J., said: "If rule 20, by long non-observance, had gone into disuse, and was a regulation of the company in name only, and no longer binding, we know of no law which, notwithstanding, prevented the parties from making it the basis of their contract for plaintiff's service, and if bona fide entered into, how proof of any custom theretofore existing to the contrary, might set aside and annul the deliberate engagements of the parties. Surely this would be making their contract for them, and denying them the privilege. We must hold, therefore, that when a contract of the kind we are construing has been entered into between the parties, no proof of custom can be made to the contrary of its stipulations, to vary its binding force; and that it must be held binding between the parties, unless it be shown, by their acts and conduct, they have mutually altered and rescinded it." What was said on the subject in the Hissong case was quoted, approved, and followed in Louisville & Nashville Railroad Company v. Mothershed, 110 Ala. 143, 20 So. Rep. 67. We think we can safely conclude that the court erred in not instructing the jury in the language of the request. This ruling covers two other grounds of the motion for a new trial, wherein the same point was made but in different ways.

3. The court charged the jury: "If you find from the evidence that Goodwin was induced to sign the release contract by fraudulent misrepresentations of the defendant's agent, Coleman, that is to say, a contract the terms of which he did not understand, and voluntarily assented to on account of the fraudulent misrepresentations, the same would not be legally binding upon him."

The error assigned, in the motion for a new trial, on this charge was, that there was no evidence that the company's agent, Coleman, had used any fraudulent misrepresentations which induced Goodwin to sign the contract, and that the charge erroneously authorized the jury to find that there had been such fraudulent misrepresentations.   Goodwin testified that he signed the instrument which purported to be a contract, a copy of which we have hereinbefore set out, but that he did not write the words, "I have Red the above carefully and fuly understand it," which immediately preceded his signature; that at the time he was employed, the company's yardmaster said: "Run up here and sign a receipt for a coupling-stick, and go down and work with that man. I have got a man out there working by himself." He further testified: "I went up there, and Mr. Coleman [the yardmaster's clerk] had that same thing, what defendant calls coupling-stick contract, right there, and he says, 'Sign this here right quick.' He says, 'It is nothing but a receipt for a coupling-stick,' . . . and says, 'I will get you a coupling-stick after awhile.' Upon that I signed it; I never knew it was a contract, or anything else except that it was a receipt for a coupling-stick, as it was represented to me to be." He further testified that he was in the office not more than a minute — just long enough to sign the instrument — and then ran down the steps and went to work with the man who was working by himself, and that in about fifteen minutes Coleman gave him a coupling-stick.   As we have seen, the only question raised by the assignment of error is, was there any evidence that Coleman made any fraudulent misrepresentations which induced Goodwin to sign the instrument?   According to Goodwin's positive testimony, Coleman explicitly told him that the instrument he was requested to sign was "nothing but a receipt for a coupling-stick"   If made, this statement was a misrepresentation — a misstatement of fact — as the instrument was not a mere receipt for a coupling-stick, but was in form an express contract, binding the employee who signed it to observe the rules of the company as therein stated.   Was there any evidence tending to show that the alleged misrepresentation was fraudulent?   "Misrepresentation of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, constitutes legal fraud."   Civil Code, § 4026.   See also § 3533.   The alleged mis-

representation was of a material fact. Coleman, if he made it, must have known of its falsity, as it was his duty to have such an instrument signed by Goodwin; and if Coleman misrepresented the character of the instrument, the jury would be authorized to find that he did so intentionally and wilfully. Goodwin testified, in effect, that he was deceived by it and that he was induced by it to sign the instrument; and it is evident that if he should be bound by his signature he would be injured. Under these circumstances, the jury might infer that the misrepresentation was made to deceive. In 14 American & English Encyclopædia of Law, page 103 (b), the rule is thus stated: "If a representation has been made with actual knowledge of its falsity, or what the law regards as equivalent to actual knowledge, an intention that it should be acted upon and should deceive will be presumed." We think it clear, from what has been said, that the charge under consideration is not open to the criticism made on it. We are not to be understood as holding that the charge, without qualification, was sound. As was said in *Wood* v. *Cincinnati Safe Co.*, 96 *Ga.* 120, "fraud in its procurement voids a contract, . . if one, apparently consenting by the execution of a written contract, can show that he did not in fact consent to its terms as therein expressed, but that his apparent consent was induced by false and fraudulent practices, by means of which he was overreached by the other party, and, without negligence upon his own part, really deceived as to the terms of the contract, he would be entitled to be relieved from its apparent obligations. A negligent omission to inform himself as to the truth of the representations when he had an opportunity so to do, or might, by the exercise of reasonable diligence, have done, would amount to a waiver upon his part, and he would thereafter be estopped to impeach the contract upon grounds against which the exercise of reasonable care would, in the first instance, have protected him."

5. Exception was taken to the court's charge, in the language of the Civil Code, § 5163, that "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted."

After carefully studying the brief of evidence, we do not think this charge was applicable to the facts of the case. It does not appear that the railway company had any evidence in its power and within its reach, on any contested issue in the case, which it failed to produce. While we do not rule that the giving of this correct, abstract principle in charge was cause for a new trial, we do say that it was inapplicable. The questions made in the grounds of the motion for a new trial upon which we have not ruled are not such as will likely arise on another trial; so we deem it unnecessary to pass on them.

*Judgment reversed. All the Justices concur.*