*Brock, Sparks & Russell,* for defendants.

---

15941.  Guerney Heater Manufacturing Company v. Woods.

Jenkins, P. J.  1. In order for a contract to be effected by correspondence, there must be a mutual assent of the parties by an absolute offer and an unconditional acceptance thereof. Whether or not, where the acceptance of an offer has not been absolute but conditional only, a subsequent elimination of the condition would create a contract, where at the same time a new and independent condition is simultaneously engrafted, it is unnecessary in the instant case to decide, since the elimination of the original condition was here effected only by the interposition of the ancillary condition. Thus, where an offer for the purchase of a commodity is accepted, "providing credit arrangements are satisfactory," and the vendor, after such conditional acceptance and prior to any shipment of the goods, approves the order, freed of the condition as to the approval of credit, save that it is required that the goods shall be ordered out "within 4 months from date," no unconditional acceptance of the original offer is shown.

2. The suit in this case being based and dependent upon the validity of an alleged original contract of purchase and sale, stripped of any condition relative to the time in which the goods should be ordered out, and it appearing from the undisputed documentary evidence that the only

acceptance of the offer was based upon the condition that credit arrangements would be satisfactory, and it further appearing that, prior to any shipment of the goods, the credit arrangements of the vendee were approved with the expressed condition attached to the acceptance that the goods must be ordered out within four months, the verdict in favor of the plaintiff (the purchaser) was contrary to law, as being without evidence to support it.

3. In view of these rulings, it is unnecessary to determine the merits of the special exceptions taken to the charge of the court, or whether, in the form in which the exceptions were made, they could properly be considered.      *Judgment reversed.  Stephens and Bell, JJ., concur.*

DECIDED AUGUST 21, 1925.

Attachment; from Glynn superior court—Judge Highsmith. August 16, 1924.

Woods filed a declaration in attachment against Guerney Heater Manufacturing Company, a nonresident, claiming damages on account of its alleged breach of a contract entered into by correspondence.  On July 22, 1922, the company's representative wrote to Woods as follows: "I take pleasure in quoting you as follows on the material for the above operation (Brunswick School, Brunswick, Ga.) for the net sum of $3919.44" (the boilers and other heating apparatus being listed and described).  On August 21 Woods wrote to the representative: "We close for boilers and radiation as per your letter of July 22, 1922, high school and auditorium, this city, $3919.00.  Shipping instructions later.  Reply."  On August 26, no reply having been made, he telegraphed to the representative: "Either accept or cancel our offer before 6 o'clock p. m. this date." On August 30 the company telegraphed to Woods:  "Will accept order Brunswick School at price quoted providing credit arrangements are satisfactory."  On August 31 Woods wrote to the company:  "Please enter our order for boilers and radiation for high school and auditorium, this city, as per your quotation of July 22nd, 1922 [describing the apparatus].  Can make satisfactory credit arrangements.  Will mail shipping instructions later."  On September 7 the company wrote to Woods an acknowledgment of the order:  "Ship to:  Advice.  Via B. & A. O. S. S. Co. & A. C. L. via B. in C/L.  When:  Advice.  (Listing and describing the apparatus.)  Tag: High School & Auditorium, Brunswick, Ga.  Acknowledgment: All goods shipped released at buyer's risk. Terms 30 days net.  We take pleasure in entering your order as above.  If not correct in every detail, please advise at once.  Should you wish to correspond with us concerning this order, be sure to

refer to our stock number as given above, which will be appreciated by us and enable us to serve you more promptly. . . The completion of the details and directions for shipping are to be given within four months from date. In the event of noncompliance with these conditions, we reserve the rights of cancellation." On April 17, 1923, Woods wrote to the company: "You will please order out for us within thirty days 2 boilers—48—12—S—6500 sq. ft. rated capacity each. Bright idea. Also at the same time the radiators as listed on the attached sheets, and marked first floor and second floor. Please route via B-A-OSS Co.-ACL." On June 6 the company wrote to Woods: "This order was accepted, of course, subject to our usual terms, i.e., receiving shipping instructions within the usual four months from date of order. This four months expired some time ago, and while we do not wish to be unreasonable, believe we are justified in revising our quotation, particularly due to the advance in the cost of manufacturing since that time. Mr. Starbuck states he wrote you regarding this order, but up to date has received no reply. We would like very much to ship you this material if we can get together on a price which will be satisfactory to us both. Our suggestion would be to invoice the material based on our October sheets, which are considerably lower than those now effective, and still would allow us a small margin on the sale. Will you kindly advise us in regard to the above at your early convenience, as no doubt this material will be required shortly, if the job has been going along as fast as expected." On June 12 Woods telegraphed to the company: "Regret your delay in reply to our order of April seventeenth. Please rush order based on October sheets as per your letter of June 7th." The final telegram sent by Woods to the company was as follows: "The agreement as varied by acceptance of terms named in your letter June 7th simply changed the price of material only to $4149.00 instead of sum named in original quotation, leaving you obliged to pay full freight charges, and I must insist on your doing so accordingly. Authorize deduction of full freight and demurrage charges."

From undisputed evidence it appears that after the foregoing correspondence but before the final telegram from Woods, the company shipped the goods on draft with bill of lading attached, amounting to $744.40 more than the original quoted price, and

that, in order to get the material, Woods paid the draft, and attached the proceeds in the hands of the bank before they could be remitted to the company. The jury returned a verdict for the plaintiff for $744.40 and interest. The court overruled the defendant's motion for new trial, and the movant excepted.

*W. C. Little, Henry O. Farr,* for plaintiff in error.

*Krauss & Strong,* contra.