38948.   GOLDSTEIN *et al.* v. IPSWICH HOSIERY COMPANY, INC.

Decided September 13, 1961—Rehearing denied
September 29, 1961.

502

*Arnall, Golden & Gregory, H. Fred Gober,* for plaintiffs in error.

*John M. Sikes, Jr., Lipshutz, Macey, Zusmann & Sikes,* contra.

BELL, Judge. ■ The plaintiff in its brief for the first time raises the issue that there was no proper basis for the defendants' motion for judgment notwithstanding the verdict in that there had not previously been made a motion for directed verdict which is a condition precedent to a motion for judgment notwithstanding the verdict. *Southwind Trucking Co. v. Harvey,* 96 Ga. App. 715 (101 SE2d 223). The record before this court as approved by the trial judge states that the recital of facts contained in the motion for judgment notwithstanding the verdict is approved as true and correct, and this motion contained in the record recites that the defendants moved for a directed verdict as to counts 1 and 2. The bill of exceptions also recites that a motion for a directed verdict had been made. The bill of exceptions is approved as correct by the defendants' attorney and the trial judge. Under these circumstances the attack on the motion for judgment notwithstanding the verdict comes too late, and furthermore is contradicted by the record before this court.

The case of *Northwest Atlanta Bank v. Zec,* 196 Ga. 114 (26

SE2d 183), does not compel an appellate court to order certified and sent up copies of the record unless *in the opinion of the appellate court* the additional portions are needful or necessary in order to fully and fairly adjudicate the errors assigned. As we view the record before us as it refers to this point in issue, it is sufficiently complete to permit a full and fair adjudication on the point and no additional record is required.

■ The defendants' first contention is that the trial court erred in striking paragraph 13 of their answer which in substance alleged that the plaintiff was guilty of bad faith in bringing the action since "the guarantee of these defendants was only for a period of one year" and this limitation was wilfully and deceitfully withheld from the knowledge of the court and from the allegations of the petition. The defendants contend that the oral motion to strike would not lie to this defensive pleading, since the answer was partially good. In view of our holding elsewhere in this opinion that the guaranty was not limited to one year, the charge of bad faith made in paragraph 13 of the defendants' answer had no basis, and the error, if any, was therefore harmless.

■ The next contention of the defendant is that the letter by which Arthur Weiss, one of the three guarantors, returned the guaranty to the plaintiff qualified the guaranty and limited its duration to one year. The guaranty was dated November 16, 1953, and did not contain any limitation as to time. The letter by which the guaranty was transmitted to the plaintiff a few days afterward, in its pertinent part, reads as follows:

"I am enclosing a copy of the agreement between your company and ours and also the guarantee signed by the stock holders of Acme Sales Co., Inc.

"Since your contract states that it is effective for one year from November 16th, both Mr. Julius and Harry Goldstein *have requested that the guarantee be good for that one year.* If necessary at the end of this period they will renew the guarantee for the succeeding year." (Emphasis added.)

The plaintiff's reply to the request contained in this letter to limit the guaranty to one year reads: "I notice your comment that the agreements are for one year and request that Messrs.

Julius and Harry Goldstein's guarantee run for one year also. If you will note, the agreement is effective until termination, as provided for. Because we both can't know now decisively just when Acme will have its own satisfactory credit standing, it will be necessary to have the guarantee remain in effect until such time as we mutually deem it at an end."

The jury by finding for the plaintiff has found that the guaranty was not limited to one year. As a matter of law, did the letter of transmittal modify the guaranty which it enclosed? Reasonably interpreted, this letter of transmittal which enclosed the guaranty, *signed without any qualification, merely requested* a change in the terms as to the duration. The plaintiff's letter in reply refused to agree to this requested modification.

The defendants cite *Guerney Heater Mfg. Co. v. Woods,* 34 Ga. App. 260 (129 SE 119), contending that it compels a holding that the letter of transmittal modified the guaranty contract here. In the *Guerney* case the acceptance of the offer made by mail clearly imposed a condition as follows: "providing credit arrangements are satisfactory," while the language in the present case is "both Mr. J. and H. Goldstein have requested." There is a decided distinction between an imposition of a condition and a mere request. That the letter of transmittal which we have here was intended to be what it stated it was, a mere request, is particularly borne out by the fact that the record reveals that one of the guarantors repeatedly over a period of five years sought to have the guaranty terminated. Furthermore, the contract of Acme Sales Co., which the guaranty guaranteed, itself provided for termination by either party upon sixty days' notice. The record shows evidence that credit was extended to the corporation on the basis of the defendants' guaranty, and there was evidence that the credit would not have been extended without it. Indeed, the defendants were notified that credit would not be extended without the guaranty by the plaintiff's letter of December 16, 1953. The defendant guarantors who were the sole stockholders of the corporation whose credit they were guaranteeing, continued to accept the credit extended to their company on the strength of their guaranty instead of terminating the contract guaranteed, which their corporation,

which they controlled, had the right to do upon sixty days' notice. Considering all these facts, it appears abundantly clear that the guaranty was not limited to one year, but instead was effective and was acted upon by both parties over a period of years.

■ ■ The next issue raised by the defendants is the contention in the motion for judgment notwithstanding the verdict that the plaintiff failed to prove his case as laid in counts 1 and 2 in that the petition alleged that the contract of the defendant was entered into "on or about November 16, 1953," while the record shows that it was dated November 16, 1953, but was not signed and returned until December 8, 1953. The record does show that the contract between the corporation, of which the defendants were sole stockholders, guaranteeing its credit, was dated November 16, 1953. Apparently, it was thus the intention of both parties to have both the contract and the guaranty effective the same date. It is elemental that contracting parties may agree to give retroactive effect, between themselves, to their contracts as they may see fit. Furthermore, the petition alleges the contract was signed on or about November 16, 1953, and the evidence shows that this was the only contract of guaranty between the parties. The case of *Mead v. McGee,* 215 Ga. 574 (111 SE2d 234), cited by the defendant, does not compel a finding in the present case that there was a failure to prove the case as laid. The *Mead* case involved an oral contract to convey land, which is subject to special scrutiny by the court. *Printup v. Mitchell,* 17 Ga. 558 (63 AD 258). In the *Mead* case the contract was alleged to have been entered into "on June 4, 1955," while the present case alleges the contract to have been entered into "on or about November 16, 1953." In the *Mead* case, applying the special rule established in the *Printup* case for actions for specific performance of oral contracts conveying land, the Supreme Court held that the trial court could grant a nonsuit where the plaintiff's testimony was contradictory and "uncertain as to the allegations of his petition" regarding the date of the contract. Here the allegations of the petition, as pointed out above, were different from those in the *Mead* case and the contract sued upon was a written guaranty admittedly executed

by the parties and not an oral contract conveying land which was denied by the opposing party as in the *Mead* case.

■ . The next contention of the defendant as to failure to prove the case as laid is made on the basis that the plaintiff failed to prove the market value of certain racks which the defendant failed to return to the plaintiff. The evidence upon the value came from the testimony of Abe Shilin, who testified as follows: "Q. Are you familiar with the market value of the racks which were sent to Acme, or to Acme's retail outlets in this case, and which have not been returned? A. I am. Q. What in your opinion, in 1959, on October 6th was the market value of those racks? A. Approximately $77, fully equipped. Q. Per rack? A. Per rack." On cross-examination the witness was asked regarding the market value of the racks, and he testified that the prices had not changed from 1953. "We have been buying at the same price right from the inception. . ." "Q. So you don't know the market value of the racks. A. I know the cost of them, sir. Q. That's what has been paid for them, but that's not the market value. Is that right? A. I don't know anything about the market value of them, sir. I know the cost of them in selling them." The witness further testified that the boxes which were placed on these racks were about half of standard size and "Consequently, the racks made for us, which we in turn supply on loan to his customers, are only of value to us, and they don't have a market value to anyone else but to ourselves. . . Q. So that, insofar as you know, there is no other potential user for this rack other than Ipswich Hosiery Company? A. I don't believe that there is."

The defendant urges that the measure of damages is the difference between the contract price and the market value at the time and place for delivery. This, of course, is the general rule in the case of an action by the buyer for breach of contract by the seller for the sale and delivery of goods. *Southern Lumber Co. v. Kennon Lumber Co.*, 29 Ga. App. 130 (114 SE 60). The present action is not an action against the seller for breach of a contract to sell goods, but an action on the guaranty for failure of the principal debtor to return or to pay for items delivered under the terms of the contract. The contract between

the corporation and the plaintiff provided that the racks would be furnished by the plaintiff at no cost to the defendant and should at all times remain the property of the plaintiff. The corporation failed to return these racks upon demand and thus became liable for them. The witness' testimony was to the effect that these racks were unique, and he placed a specific dollar value upon them.

"It does not necessarily follow that because there is no available market in which the goods can be sold at the time, they have no pecuniary value." Where this is true the damages may be the entire contract price without deduction. 5 Williston on Contracts (Rev. Ed.) 3851, § 1379; 34 A.L.R. 108. "Where a right of action for breach [of contract] exists, compensatory damages will be given for the net amount of the losses caused and gains prevented by the defendant's breach, in excess of savings made possible." 1 Restatement of the Law of Contracts, 503, § 329. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed. *Ga. Power &c. Co. v. Fruit Growers Express Co.,* 55 Ga. App. 520, 529 (190 SE 669).

Here under the evidence the item was not one customarily traded in the market place and there was some evidence of value which the jury accepted. For the reasons indicated, the plaintiff did not fail to prove his case as laid.

■ The defendants next urge that there was no proof whatsoever in the record of the value of attorney's fees and, therefore, their motion for judgment notwithstanding the verdict should have been granted. The case of *Smith v. Dudley,* 69 Ga. 78, cited by the defendants, involved, inter alia, a prayer for the granting of attorney's fees on the ground that the opposing party had been stubbornly litigious. There the Supreme Court, as there was no evidence on the subject of counsel fees nor evidence to show that the defendant had been stubbornly litigious, held that a charge that the jury might allow damages on those grounds was error. That case is obviously distinguishable from the present one, which is an action on a written guaranty which provided in part that the defendants agreed with plaintiff "to pay your reasonable costs and expenses, including

attorney's fees, on the amount then due by Acme or by ourselves, as may be incurred by you on collecting under or enforcing the aforementioned agreement or this guarantee. . ." The plaintiff contends that *Code Ann.* § 20-506, as amended, controls the attorney's fees in this case. Subsection (b) of this statute provides: "If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees, without specifying any specific percent, such provision shall be construed to mean 15 per cent. of the first $500 principal and interest owing on such note or other evidence of indebtedness, and 10 per cent. of the amount of principal and interest owing thereon in excess of $500." Here the record shows that the plaintiff gave the notice required by the above statute and the plaintiff recovered by the jury verdict 10 percent as attorney's fees. Under these circumstances there was no necessity to prove the value of the attorney's fees, since the statute specifies the amount which shall be recoverable in terms of a designated percentage of the amount of principal and interest owing.

The above ruling disposes of grounds 1, 3, and 4 of the motion for judgment notwithstanding the verdict. The trial court properly overruled the motion for judgment notwithstanding the verdict on these grounds.

■ The second ground of the motion for judgment notwithstanding the verdict contends that as to count 2 the evidence showed that the hosiery stands sued for were put into the custody of the bankruptcy court and some were stored with a separate corporation and they are awaiting shipment as soon as proper storage charges were paid to that corporation and that they were placed with that corporation at the direction of an attorney who was acting for the plaintiff in this suit. The record shows that the attorney who directed the disposition of the racks, fixtures or hosiery stands, as they are variously identified in the testimony, was acting as attorney for the trustee for the Acme Sales Co., Inc., the defendants' principal in the bankruptcy proceedings arising out of the insolvency of that principal. There was not, therefore, any showing of control exercised by the plaintiff over these racks. Under the record, the bankrupt corporation whose debts the defendants guaranteed to the plaintiff did not

account for these racks as required by the contract, and thus the defendants were liable therefor. The trial court properly overruled the second ground of the motion for judgment notwithstanding the verdict as to count 2.

■ The fifth ground of the motion for judgment notwithstanding the verdict assigned error upon the failure of the plaintiff to show affirmatively that sales tax was paid on the items sued for since the evidence showed that there were goods (hosiery) sold on consignment which remained the property of the plaintiff until sold to the consumer. We do not find any evidence in the record showing clearly that the plaintiff made any transactions which come within *Code Ann.* § 92-3404a (8). The contract of the plaintiff appears to be a contract between it, apparently a manufacturer (or perhaps a factor) to sell hosiery to Acme Sales Co., Inc., a wholesaler. The prices stipulated were wholesale prices, and the retail prices for them, though set forth in the contract, were not the prices to be charged on sales between the parties. While there was in the contract a reference to sales on consignment, upon sale thereof by Acme, "hosiery so removed and paid for shall become your [Acme's] property." The record does not show any transactions at retail by the plaintiff. "From the act itself, therefore, the intention is clear that it is the gross proceeds from retail sales carried on as a business or occupation which is designed to be taxed." *Novak v. Redwine*, 89 Ga. App. 755, 758 (81 SE2d 222). The trial court properly overruled the motion for judgment notwithstanding the verdict on the fifth ground.

■ On the motion for new trial, the defendants' contention of a fatal variance between the allegata and the probata, by reason of the time of inception of the contract, is determined adversely to the defendants in division 4 of this opinion.

In urging the motion on the general grounds, the defendants contend that the plaintiff did not have title to the accounts sued upon. The ledger cards introduced into evidence bore notations which were illegible and completely obliterated, but which were identified by the oral testimony of the plaintiff's credit manager as being notations of assignments to the First National Bank of Boston. This witness further testified that these ac-

counts of the plaintiff had at one time been assigned and later released. This was uncontradicted. Furthermore, the plaintiff's possession of its own accounts with the alleged assignment completely obliterated we feel shows sufficiently that title was in the plaintiff, there being no writing in the record either of assignment or reassignment. This clearly shows the title to the accounts as being in the plaintiff. The case of *Fenner & Beane v. Nelson,* 64 Ga. App. 600 (13 SE2d 694) is not applicable to the facts of this case.

Repetitiously, upon the general grounds of the motion for a new trial the defendants reassert that the guaranty was limited to one year; that there was no evidence as to the value of attorney's fees; that there was no evidence as to the market value of the racks sued for; and that there was a material change in the duration of the guaranty contract. In the foregoing divisions 2, 3, 4 (b), and 5, these contentions are determined adversely to the defendants.

The trial court properly overruled the motion for a new trial on the general grounds.

■ We now turn our attention to the thirty-six amended grounds of the motion for a new trial. The first ground urged is that the court erred in failing to grant a mistrial on the motion of the defendants on the basis that the jury was qualified with respect to Arthur Weiss as defendant, although he was not served and was not a party to the case, citing *Headman v. Rose,* 63 Ga. 458 (1), and *Mayor &c. of Cartersville v. Lyon,* 69 Ga. 577 (1). The *Headman* case, so far as here relevant, held merely that where two parties filed separate caveats to the application of a third party for letters of administration, each claiming the right thereto, and the cases were appealed and tried together, it was error to hold that each was entitled to six strikes and for that purpose to have a jury of thirty empaneled. That case does not, therefore, control the present contention, and neither does the case of *Mayor &c. of Cartersville v. Lyon,* 69 Ga. 577, supra, which merely held that it was error to strike jurors on the ground that they were citizens of that city which was defendant.

This ground has no merit, for under *Code* § 59-716, "all trial

jurors in the courts of this State shall be disqualified to act or serve, in any case or matter, when such juror is related by consanguinity or affinity to any party interested in the result of the case or matter, within the sixth degree, as computed according to the civil law. . ." Here it was clearly shown that Weiss, along with Harry S. Goldstein and Julius H. Goldstein, the two defendants who were served with process, was a signer of the guaranty forming a basis of the suit. As such a guarantor, he most assuredly was interested in the result of the case. Further, it is shown that Weiss was president of the debtor corporation and served as the agent of the defendant guarantors Goldstein in returning the guaranty on their behalf to the plaintiff. In addition, the defendants admit that the jury was instructed by the trial judge that Weiss was not a party to the case.

██ Grounds 2, 3, and 4 of the amended motion for a new trial urge as error that the court failed to give in its charge any rule for estimating the damage in either count 1 or count 2. The judge did instruct the jury as follows: "The contract of suretyship is one whereby a person obligates himself to pay the debt of another in consideration of credit, or indulgence or other benefit given to the principal, the principal remaining bound therefor."

The present action was for the balance of an account for which the defendants were liable, and clearly the measure of damages was the amount found owing by the principal debtor. This issue was properly submitted in the whole charge of the court to the jury.

The cases cited by the defendants, as to failure to charge on the measure of damages for unliquidated damages in tort actions, for breach of a contract to sell goods, and for breach of an employment contract are obviously distinguishable from the present suit on an account.

Special grounds 2, 3, and 4 were properly overruled.

■ Ground 5 complained of the refusal to give a requested written charge as follows: "The declaration or statements of one who is not a party to the record is not competent evidence to affect the parties before this court." While this is generally true,

here the party, Weiss, whose declarations or statements were thus sought to be excluded was a joint obligor with the defendants and president of the company whose debts the defendants were guaranteeing. He was the one who acted as their agent in transmitting the guaranty and in correspondence and negotiations regarding the matters at issue, as testified to by the defendants' own witness.

Ground 6 complains of a refusal to charge as requested "unless a person is a party to the suit (or privy) it is not an admission."

Under the circumstances of Weiss's connection with the defendants and the debtor corporation, since admittedly these requested charges related to his admissions, it was not error to refuse the requested charges. Special grounds 5 and 6 have no merit.

■ Ground 7 charges error in instructing the jury that Arthur Weiss was not a party to the case, not having been served, and therefore no verdict could be rendered against him, and "Then, as to count 1, the plaintiff prays that process issue requiring the defendants Harry S. Goldstein and Arthur Weiss to be and appear before this court. . ." The defendant contends this in effect charged Weiss both was and was not a defendant. We do not agree. The quoted portion of the charge merely stated what the petition prayed as to count 1, asking that Weiss be made a defendant. Even had it had the effect the defendants contend it did, it does not appear to have confused the jury as they did not return a verdict against Weiss. This ground was properly overruled.

■ There was no ground 8 of the amended motion. Ground 9 urges as error a charge to the jury that they were not to regard the admissions of Weiss unless they believed he had a joint interest, or that a joint interest had been proved between Weiss and the defendants Goldstein. For the reasons given in division 12, this instruction was not error under the facts of this case. Ground 9 has no merit.

■ Ground 10 attacks an instruction that expenses of litigation are not generally allowed as a part of damages, but if the defendant has acted in bad faith or has been stubbornly

■

litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them. Here the charge was error, as there was no evidence of bad faith, but we do not see how it could have harmed the defendants. Their agreement was to pay attorney's fees which the jury has awarded properly as provided in the contract under *Code Ann.* § 20-506. Error to be a ground of reversal, must be harmful to the complaining party. Here the error was not harmful. *Gulick v. Mulcahy,* 95 Ga. App. 158, 160 (97 SE2d 362).

Special ground 10 was properly overruled.

■ Special ground 11 contends that the court erred in charging sections (a), (b), and (c) of *Code Ann.* § 20-506 which sets forth the rules for interpreting obligations to pay attorney's fees "upon any note or other evidence of indebtedness." The defendants contend that their guaranty contract is not such "evidence of indebtedness." In *Sheppard v. Daniel Miller Co.,* 7 Ga. App. 760 (3) (68 SE 451), this court held that a guarantor was liable for stipulated attorney's fees "upon giving the statutory notice," and interpreted the guaranty as a "written obligation of indebtedness." We think the present contract to be "evidence of indebtedness" under *Code Ann.* § 20-506. Accordingly, special ground 11 was properly overruled.

■ Special ground 12 contends that a charge that the guarantor was as much liable for attorney's fees as for the principal of the debt, having agreed by contract to pay attorney's fees in case of suit, was erroneous for lack of evidence of their value. It is also argued that this charged the jury that the defendant was liable for attorney's fees and for the principal of the debt and it assumed there was a contract. Above in the opinion we have held that there was evidence of a contract under which the defendants were liable to pay attorney's fees and that *Code Ann.* § 20-506 eliminated the necessity of proof of value of the attorney's fees. We do not agree that the charge told the jury the defendants were liable for the debt and attorney's fees, since the language was "he is *as much liable* for attorney's fees as for the principal of the debt." (Emphasis added.) The question of liability was thus left open for the jury to decide.

Special ground 12 was properly overruled.

■ Special ground 13 assigns errors on the charge of the court which stated that, "Where one guaranteed an account to be furnished to another, the duty was upon him to notify the creditor when he refused to be longer responsible." The contention as to error here is that it was not adjusted to the evidence as the contract was for one year (which we have held is not so, and the jury has so found), or was one that could be terminated only by mutual consent under the evidence of the plaintiff. The terms of the contract in the record bound the guarantor without limit as to time, but the contract they were guaranteeing could be terminated upon giving of sixty days' written notice. Again we do not see how the defendants could have been harmed by this charge. Notice of refusal to be responsible would not have relieved them under the guaranty.

Special ground 13 was properly overruled.

■ Special ground 14 assigns as error the court's charging the jury as follows: "Where a party has evidence in his power and within his reach by which he may repel a claim or a charge against him and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, the presumption arises that the charge or claim is well founded, but this presumption may be rebutted. If a party should fail to produce a witness who is accessible to him, the jury would determine whether such failure warranted the inference that the witness, if produced, would have testified to facts prejudicial to him. If a witness is equally accessible to both parties and it would be as reasonable to expect one party to produce him as the other, no presumption would arise against either party for a failure to produce the witness. If there should be nothing in the evidence to justify the conclusion that a witness who was not called by a party to the case was under the power and control of such party, no presumption would arise that the testimony of the witness, if called, would have been unfavorable to that party." The defendant objects to this portion of the charge on the basis merely that: "Said charge was erroneous and injurious to defendants because there was no evidence defendants had witnesses in their power to explain the occurrences or disprove facts relied on by plaintiff."

In his brief the defendant contends merely that this ". . . charge was erroneous since there was no evidence that there was suppression of evidence or witnesses by either party." It is apparent that this ground is incomplete, for the reason that there is no reference to any manner or means or indication as to how the defendant was harmed by the charge, neither is there pointed out in the purported assignment of error any part of the record which would tend to show how or in what manner the defendant was injured or that it applied only to the defendant.

Further, it is obvious from a reading of the portion of the charge objected to that there was no specific reference by the trial judge to any of the parties involved. Indeed, the defendant in his brief suggests the answer to his own objection to this abstract by saying in effect that it was merely inapplicable since the evidence did not apply to either of them.

While the provisions of *Code* § 38-119 should be sparingly charged and should not be given by the trial judge in absence of a factual situation authorizing it, it is, nevertheless, suggested in the case of *Central of Ga. Ry. Co. v. Goodwin,* 120 Ga. 83, 120 (47 SE 641, 1 AC 806), that although the section is charged in a case where it is not applicable, in absence of harm or injury to one side the charge would not require a reversal.

Special ground 14 is incomplete.

Special grounds 15 and 16 of the amended motion for new trial contend that the trial court erred in instructing the jury that the jury would be entitled to add 10 percent of whatever amount the jury might find as principal for attorney's fees. In division 5 of this opinion we have held that *Code Ann.* § 20-506 and the contract sued upon, authorized the awarding of attorney's fees in this case. There was error in this instruction, since under the statute the plaintiff could have been awarded 15 percent of the first $500 on each count. The error here was against the plaintiff, and not detrimental to the defendants, who cannot complain.

Special grounds 15 and 16 were properly overruled.

Special ground 17 of the amended motion for new trial complained that the court erred in instructing the jury with respect to plaintiff's Exhibit P-2 as follows: "P-2, letter of

transmittal, is admitted for the purpose of being a letter of transmittal and for no other purpose, and I so instruct the jury at this time." The letter referred to was the letter of President Weiss, of the principal debtor corporation, which is quoted in part in division 3 above and contains a request that the guaranty be effective for one year only. In view of the holding in division 3 that the guaranty was not limited to one year only by this letter, the instruction of the judge limiting the purpose of the letter was not harmful to the defendant.

Special ground 17 was properly overruled.

■ Special ground 18 of the amended motion for new trial complained that the court intimated or expressed an opinion as to the merits of the cause of action, as follows: "All right, sir, that will give you a chance to reverse me, Mr. Gober. That is, provided you lose your law suit. Of course, if you don't lose it, then you won't have to reverse me; the jury will have done it. All right now, you have got P-1 and P-2." The contention is made that this language had the effect of telling the jury that if the jury found for the defendants, in effect, they would be reversing the court, and the judge has thus expressed an opinion on the merits of the cause of action. A reading of the record shows that the quoted statement of the trial judge referred only to his ruling on the defendants' objection to plaintiff's Exhibit 2. Reasonably interpreted, the judge was not expressing an opinion on the merits of the cause of action, but was merely pointing out that he felt his ruling on the admissibility of the evidence tendered was proper.

The trial court properly overruled special ground 18.

■ Ground 19 of the amended motion for new trial assigned error on the admission into evidence of the letter of the plaintiff corporation which acknowledged receipt of the guaranty of the defendants and the agreement between their principal debtor and the plaintiff company. The basis of this objection was that Arthur Weiss, to whom the letter was written, was not a party to the suit and that the letter was a declaration out of the presence of the plaintiff in error and, therefore, hearsay. The plaintiff in error contends that, since Arthur Weiss was one of the coguarantors with the two defendants who were served,

that this was an admission of a joint obligor which could be received in evidence against his co-obligor. Without passing upon this contention, we hold that this letter was properly admitted over objection since it was an answer to the letter written by Weiss on behalf of the three guarantors who had requested, by the letter, a modification of their contract of guaranty. The contention of the plaintiff in error throughout the case was that the letter which the letter of the defendant in error answered was part of their contract of guaranty and restricted its terms to one year. This we hold is an admission of agency of Weiss for his coguarantors, defendants below, and the reply to their agent's request was properly admissible in evidence in the action against the defendant principals.

Special ground 19 was properly overruled.

█ Special grounds 20 and 21 object to the admission into evidence of letters from the plaintiff to Weiss demanding payment of the accounts of the Acme Sales Co. for whom the defendants were acting as guarantors on the theory that Weiss was not a party to the suit. The record reveals that Weiss was president of the defendant guarantors' principal debtor. These letters were evidence of the demand for payment of the debt against the principal debtor. Accordingly, there was no error in admitting them into evidence on the grounds assigned. Special grounds 20 and 21 have no merit.

█ Special grounds 22 and 25 assigned error on the judge's expression of an opinion to one of the defendants on the witness stand: "There is nothing before the court anywhere that this change here to guarantee was ever accepted by [the plaintiff] and in order to change it to guarantee for one year you have to have an offer on his part and an acceptance on their part." The other alleged expression of opinion was: "Well, I think the contract would speak for itself, because it doesn't show that it was guaranteed for a year." Under the holdings in division 3 of this opinion that the defendants' request to change the duration of the guaranty was not effective to change it, we hold there was no error in these expressions of law, which were correctly stated.

Special grounds 22 and 25 were properly overruled.

█ Special grounds 23, 24, and 26 were abandoned. Special

ground 27 was that the evidence failed to show the plaintiff had title to the indebtedness sued for in count 1. This contention is answered adversely to the defendants in division 8 of this opinion. Special ground 27 was thus properly overruled. Special ground 28 urges that there was no evidence of the value of the attorney's fees sued for and therefore there was no evidentiary data on which to base the verdict and judgment complained of. This contention is answered in division 5 adversely to the defendant, and the trial court properly overruled special ground 28.

■ Special grounds 29 and 30 urged that the evidence failed to show any market value for the racks and other items sued for and complained of the failure of the court to charge that the measure of damages with respect to the items sued for in count 2 would be the fair and reasonable market value of the items as of the time demand was made for the items at the place where same, under plaintiff's contentions, should have been delivered. This contention is answered adversely to the defendants in division 4 (b) above. Special grounds 29 and 30 were properly overruled.

■ Special ground 31 contends that the verdict is without evidence to support it as the evidence did not establish a contract as set out in plaintiff's petition. This contention is answered adversely to the defendants in division 4 (a) above, and this special ground was properly overruled.

■ Special ground 32 complained that the court erred in refusing to submit to the jury the ambiguous guarantee contract between the parties, contending that the guaranty was for one year or else there was no contract between the parties. This contention is answered adversely to the defendants in division 3 above, and special ground 32 was properly overruled.

■ Special ground 33 of the amended motion for new trial was that the evidence of the defendant in error was that the guaranty was changed by the plaintiff's letter of December 16, 1953, in that this letter required the guaranty to remain in effect "until such time as we mutually deem it at an end." This letter of the plaintiff was in answer to the letter transmitted on behalf of the defendants by their coguarantor Weiss, in which

he requested the guaranty be restricted to a term of one year, The defendants' contention is that the plaintiff's letter constituted a material alteration of the contract without their consent. As we have held in division 3 above, the defendants' letter transmitting the guaranty, which was signed without any condition, constituted a mere request to change this unconditional guaranty, and the letter of the plaintiff in reply was a refusal to accept the requested modification and was not, therefore, a material alteration of the contract between the plaintiff and the defendant. It is elemental that it is not possible to have a unilateral modification of a contract previously entered into between the parties.

Special ground 33 was properly overruled.

■ Special ground 34 of the amended motion for a new trial contends that the verdict in count 1 was excessive and was the result of prejudice, bias, or gross mistake since the testimony of the plaintiff's witness was that the defendants' principal debtor (Acme Sales Co., Inc.) was not given credit for the full amount of the invoice charges for hosiery returned but was charged $1.00 per dozen for reprocessing 774 dozen and the verdict did not give effect to this charge of $1.00 per dozen and the defendant should have been credited with $774. The record shows that this witness of the plaintiff testified that the Acme Sales Co. was given credit for the full amount of the invoice charged less $1.00 per dozen for reprocessing the merchandise returned. The witness testified that when the merchandise was returned it had to be reprocessed since the colors and styles were discontinued, the packages were broken, and the boxes were dirty. "The goods certainly wasn't [sic] clean goods." He testified that it had to be reprocessed, and that the charge of $1.00 per dozen was a conservative charge for such reprocessing. The jury apparently allowed this as a proper charge for reprocessing the returned merchandise, and we cannot say from the evidence that this was error.

Special ground 34 was properly overruled.

■ Special ground 35 contends that a new trial should have been granted because the evidence of the plaintiff's witness was that a photostatic copy of the contract sued upon had

thereon the words, "We will guarantee until January 2, 1955," and that the alleged guarantors stated that the guarantee was in effect for only one year, thereby disproving the plaintiff's case. The contention that the guaranty was in effect for only one year is answered above in division 3 adversely to the defendants. Reading the record, the testimony of the plaintiff's witness referred to was that the instrument of the guaranty, which the plaintiff received from the defendant guarantors, did not contain the quoted handwritten restriction on the guaranty to January 2, 1955. The witness positively testified that there was not any such writing on the guaranty furnished to the plaintiff. There was a conflict in the evidence as to whether the guaranty contained this handwritten period of limitation. But the jury has resolved the conflict adversely to the defendants.

Special ground 35 was properly overruled.

■ Special ground 36 contends a new trial should have been granted because the evidence with respect to count 2 revealed that the racks therein sued for were turned over to Morris Macey, who was an attorney for the plaintiff, and that he therefore received possession on behalf of the plaintiff and turned the racks over to a third party. This contention is answered adversely to the defendant in division 6 above in the holding showing that the record clearly indicates that the attorney was acting as counsel for the trustee in bankruptcy and not on behalf of the plaintiff. Special ground 36 has no merit.

The trial court did not err in overruling the defendants' motion for new trial as amended and the motion for judgment notwithstanding the verdict. The trial court properly sustained the motion to strike paragraph 13 of the defendants' answer.

*Judgment affirmed. Felton, C. J., and Hall, J., concur.*